# EXHIBIT 1

# MINUTES OF ORGANIZATIONAL MEETING OF
# DIRECTORS OF KNIGHTS OF VON DUKE
# INSURANCE COMPANY, LIMITED

The organizational meeting of the Directors of the Knights of Von Duke Insurance Company, Limited occurred on October 7, 1999, at 3940 Locust Lane, Harrisburg, Pennsylvania 17109. Directors who were present included Carl A. Hoffman, Jr., D.O., CCHP, William E. Anderson, Jr., and Richard C. Smith. Theresa Marie Hoffman was absent due to illness.

It was announced that the official license granted to Knights of Von Duke Insurance Company, Limited would be kept in the British Virgin Islands ("BVI") at the offices of AMS Group/AMS Insurance Management Services, Limited and that a corporate seal would be forthcoming.

In accordance with the applicable provisions of the International Business Companies Act, Cap. 291, as amended, the resolutions and corporate actions set forth below were acted upon as follows:

1.   **Resolution to Open Accounts for Disposition of Stocks, Bonds, Mutual Funds, and other Securities**

      **RESOLVED**, that the proper officers of the corporation are hereby authorized and directed, in the name and on behalf of the corporation, to open accounts for the disposition of stocks, bonds, mutual funds and other securities and to transfer funds so as to facilitate the same.

2.   **First Fiscal Year and Fiscal Years Thereafter**

      **RESOLVED**, that the Board of Directors, acting pursuant to the Corporation's By-Laws, hereby establishes the first Fiscal Year of the Corporation to be from September 24, 1999 through December 31, 1999. The Board of Directors further establishes each Fiscal Year thereafter as the calendar year ending December 31, unless and until the By-Laws are amended to provide for a different fiscal year.

3.   **Adoption and Ratification of Memorandum and Articles of Association**

**RESOLVED**, that the Memorandum of Association of the Knights of Von Duke Insurance Company, Limited, as filed with and approved by the Government of the British Virgin Islands, is hereby accepted and ratified.

**FURTHER RESOLVED**, that the Articles of Association of the Knights of Von Duke Insurance Company, Limited, as adopted by the Subscribers of the Corporation and attached to the written consent of the Subscribers, are hereby approved and ratified by the Board of Directors.

4.   **Election of Officers**

**RESOLVED**, that the officers of the corporation until the next annual meeting of the Board of Directors shall be:

| | |
|---|---|
| Carl A. Hoffman, Jr., D.O., CCHP | President |
| Theresa Marie Hoffman | Vice President |
| Richard C. Smith, M.S. | Secretary |
| William E. Anderson, Jr. | Treasurer |

Such officers shall serve until such officer's successor has been duly elected and qualified.

5.   **Approval of Stock Purchase Agreement**

**RESOLVED**, that the Board of Directors approves and ratifies the Stock Purchase Agreement delineating the subscription for shares of the common stock set forth below:

| Shareholder | Number of Shares | Amount |
|---|---|---|
| Carl A. Hoffman, Jr., D.O., CCHP | 135,000 | $135,000.00 |
| Theresa M. Hoffman | 135,000 | $135,000.00 |
| William E. Anderson, Jr. | 15,000 | $15,000.00 |
| Richard C. Smith, M.S. | 15,000 | $15,000.00 |

**FURTHER RESOLVED**, that the President or Vice President and the Secretary of the Corporation are hereby authorized and directed to prepare and issue stock certificates representing the shares of common stock of the Corporation and to cause such certificates to be duly executed and delivered to the shareholder referred to in the foregoing resolution.

6.    **Ratification of Actions Involved and Expenses Incurred in License Application Process**

>   **RESOLVED**, that all actions necessary and incident to the license application process are hereby ratified by the Board of Directors as valid Corporate actions and that the President and other proper officers are hereby authorized and directed, for and on behalf of the Corporation, to pay all expenses incident to or arising out of the organization of the Corporation and to reimburse the persons (if any) who have previously paid or advanced such expenses on behalf of the Corporation.

7.    **Authority to Enter Into Reinsurance Agreement**

>   **RESOLVED**, that the officers of Knights of Von Duke Insurance Company, Limited are hereby authorized to enter into a Reinsurance Agreement with Frontier Healthcare Group/Western Indemnity Insurance Company for purposes of reinsuring various risks as determined to be appropriate by the said Board of Directors.

8.    **Ratification of Interim Indemnity Agreement**

>   **RESOLVED**, that the Board of Directors hereby ratifies the actions of the Officers of Knights of Von Duke Insurance Company, Limited in entering into an Interim Indemnity Agreement with Frontier Healthcare Group, during the pendency of the Corporation's license application in the British Virgin Islands, to assume various risks until licensure might be accomplished and a formal reinsurance agreement reached.

Following adoption of the first eight resolutions, there ensued a general discussion of the separate and distinct nature of the business activities of the Knights of Von Duke Insurance Company, Limited from the operations of PrimeCare Medical, Inc., as well as a colloquy involving possible other third party reinsurance risks to be considered on an ongoing basis.

9.    **Additional Insurance Coverages for PrimeCare Medical**

>   **RESOLVED**, that the Board of Directors of Knights of Von Duke Insurance Company, Limited authorizes the officers to enter into insurance contracts with PrimeCare Medical, Inc. for purpose of providing various insurance coverages as needed by that entity.

3

10. **Federal Tax Election**

**RESOLVED**, that the Knights of Von Duke Insurance Company, Limited elects to be taxed as a United States insurance company and that the officers are authorized to file the necessary documents under Internal Revenue Code Section 953 with the Internal Revenue Service as evidence of said election.

**FURTHER RESOLVED**, that the officers of the Corporation are authorized to apply for exempt status under Section 501(c)(15) of the Internal Revenue Code and to file all necessary documents to effect the granting of that status.

11. **Authority to Open Bank Accounts**

**RESOLVED**, that the officers of Knights of Von Duke Insurance Company, Limited are hereby authorized and directed to take any and all actions in order to establish bank accounts at Pennsylvania State Bank or any other banking institution acceptable to the BVI for the efficient conduct of the Corporation's business.

**FURTHER RESOLVED**, that two signatories of the four officers shall be required on all checks issued on any such account or accounts established for these purposes.

**FURTHER RESOLVED**, that any and all form resolutions required by any corporate depository are incorporated by reference and adopted by the Board of Directors so long as the President of the Corporation decides that such resolutions are necessary or advisable.

12. **Approval of Off-Shore Manager**

**RESOLVED**, that the Board of Directors of Knights of Von Duke Insurance Company, Limited authorize and approve AMS Group/AMS Insurance Management Services, Limited as off-shore manager in the British Virgin Islands for all matters necessary and incident to the business of the insurance company there.

**FURTHER RESOLVED**, that the Board of Directors authorize the retention of Nigel Bailey as Consultant on Insurance and Regulatory Matters in the BVI.

4

13.    **Approval of United States Insurance Manager**

      **RESOLVED**, that the Board of Directors of Knights of Von Duke Insurance Company, Limited authorize and approve Jon D. Kirssin and Byerly, Inc. as United States Insurance Manager for the operations of the insurance company.

14.    **Ratification of Prior Actions**

      **RESOLVED**, that the actions of the Corporation prior to its organizational meeting are approved and ratified, including the following: (a) deposit of the capital of the Corporation with Pennsylvania State Bank in the amount of $300,000.00; (b) all actions of the subscribers of the Corporation previously taken to effect the incorporation and organization of the corporation and the commencement of its business operations; (c) action of the corporation to make application for an insurance company license with the Insurance Commissioners of the British Virgin Islands; and (d) action of the Corporation in applying for an Employer Identification Number with the Internal Revenue Service.

15.    **Approval of Counsel**

      **RESOLVED**, that David Bricker, Esquire of the law firm of Eckert, Seamans, Cherin and Mellot is approved and ratified by the Board of Directors as counsel of record to Knights of Von Duke Insurance Company, Limited.

      **FURTHER RESOLVED**, that G. Thomas Roberts, Esquire of the law firm of Coulson Williams is approved and ratified by the Board of Directors as special insurance counsel to Knights of Von Duke Insurance Company, Limited.

16.    **Approval of Accountant**

      **RESOLVED**, that James Smeltzer, C.P.A. of the firm Seligman, Friedman & Co. is approved and ratified by the Board of Directors as accountant of record to Knights of Von Duke Insurance Company, Limited.

17.    **Approval of Actuary**

      **RESOLVED**, that James Gordon of G.P.W. and Associates of Phoenix, Arizona is approved and ratified by the Board of Directors as insurance actuary to Knights of Von Duke Insurance Company, Limited.

Following adoption of the foregoing Resolutions, a general discussion ensued regarding a

variety of topics. By-Laws were mentioned, although David Bricker indicated that the Articles of

5

Association may suffice in the place of By-Laws.  It was announced that an audit must be completed and in the hands of BVI regulatory authorities by March 31, 2000.  Jon Kirssin indicated that James Gordon would relay appropriate information and that a quarterly statement of income and balance sheet could be done in-house.  The next meeting was scheduled for December 2, 1999 at 1:30 p.m.

On Motion, duly seconded and passed, this Organizational meeting was adjourned.

_____

Carl A. Hoffman, Jr., D.O., CCHP, Director

_____

Theresa Marie Hoffman, Director

_____

William E. Anderson, Jr., Director

_____

Richard C. Smith, M.S., Director

6

# EXHIBIT 2

January 28, 2008

Carl A. Hoffman, Jr., D.O., CCHP
President/Corporate Medical Director
PrimeCare Medical, Inc.
3940 Locust Lane
Harrisburg, PA  17109

Dear Dr. Hoffman:

The purpose of this correspondence is to alert you and PrimeCare Medical, Inc. (hereinafter referred to as "the Corporation") as to likely waste and wrongdoing in regard to the Corporation's business practices in medical contracts with several counties in the Commonwealth of Pennsylvania and in the Division of Juvenile Services and Regional Jails in the State of West Virginia.

## County Medical Contracts, Commonwealth of Pennsylvania

### Dauphin County Prison, Harrisburg, PA

It has been a routine practice of the Corporation to leave positions vacant and thereby under-fill contractually-required staffing minimums in our county contracts. As a result, the Corporation gains revenue for contractually-mandated services that it does not provide. Examples of this practice in Dauphin County include required nursing positions left vacant, a required Nurse Supervisor position left vacant and ten (10) hours per week of Psychiatric care that the Corporation has knowingly failed to provide. All of these items are specifically required by the Dauphin County contract. The Psychiatry hours alone result in revenue for unprovided services amounting to approximately $104,000 per year. This practice has contributed to the following gross margin at the Dauphin County Prison in 2006:

| YEAR | GROSS REVENUE | GROSS MARGIN | GROSS MARGIN % OF REVENUE |
|------|---------------|--------------|---------------------------|
| 2006 | $3,000,000 | $915,000 | 30% |

Note:  The Corporation (PrimeCare Medical, Inc. presently and Pennsylvania Institutional Health Services formerly) has been retained by Dauphin County for nineteen (19) years.

This practice could be regarded as substantial abuse, misuse, destruction or loss of funds or resources owing to Dauphin County.

I discussed the unprovided psychiatric hours with Dr. Enos Martin at great length. I had asked him if he would provide the hours not covered. I continually asked you to give authority to provide the required services and you continually denied my requests. These types of decisions rest solely with you given the fact that you personally supervise and manage this contract.

These types of business practices compromise the integrity of the Corporation and diminish the public's confidence in its ability to provide reputable service. The substantial gross margin realized by the Corporation on this contract adds to the

appearance that the Corporation is intentionally billing Dauphin County for unprovided services and committing a fraud on the County.

Lancaster County Prison, Lancaster, PA

Lancaster County is a relatively new contract for the Corporation. The situation currently occurring is an example of steadily deteriorating operations by the Corporation as shortcuts are made to improve profits while jeopardizing patient care.

This contract requires on-site physician services. It is currently being run on-site by Rod Hostetter, a Physician Assistant with relatively little experience in correctional medicine. He is to be supervised by Dr. Eric Von Kiel the Assistant Corporate Medical Director, who is spread dangerously thin at several facilities. He is rarely on-site to supervise Mr. Hostetter. This is a violation of the Medical Practice Act since his work must be reviewed regularly by the supervising Physician. It would also be a violation of express or implied warranties in the Corporation's contract with the County. Regardless, the Corporation continues to accept revenue from Lancaster County as if the contract were being fully performed. Instead, the Corporation is knowingly implementing shortcuts that leave patient care severely compromised.

I continually questioned you concerning the Corporation's increased use of mid-level practitioners (physician assistants and nurse practitioners). The Corporation was using these practitioners to reduce costs and increase profits, even though its contract required professional services from an M.D. or D.O. No credit was offered to the state or county agencies for the reduced overhead of these providers. The Corporation was also engaging in questionable practices regarding compliance with regulations.

## West Virginia Division of Juvenile Services/West Virginia Regional Jail Authority

The Corporation was cited in 2006 by the West Virginia Division of Juvenile Services for its failure to provide the "contractually required on-site services for physicians". This prompted my request to corporate operations staff to review not only the Division of Juvenile Services contracts but also the West Virginia Regional Jail contract. Widespread deficiencies were discovered at nearly all facilities in physician hours on-site. I argued continually in public meetings attended by you and the Corporation's Vice-Presidents and Officers and in meetings that included all corporate office managers as well as private meetings with you that the Corporation needed to make correction of these severe deficiencies a "top priority". I pointed out that failure to provide these basic services undermines the public trust in the corporation and could result in legal actions against the Corporation and cancellation of the Regional Jail contract. These unethical practices yielded the following approximate windfall gross margins at the following West Virginia Regional Jails and Juvenile facilities in 2006:

West Virginia Regional Jails

| Facility (Jail) | Revenues | Gross Margin | Gross Margin % of Revenues |
|---|---|---|---|
| Southern Regional | $ 1,500,000 | $ 400,000 | 26% |
| South Central Regional | 2,000,000 | 500,000 | 25% |
| Northern Regional | 2,000,000 | 650,000 | 32% |
| North Central Regional | 1,800,000 | 460,000 | 25% |
| Western Regional | 1,600,000 | 500,000 | 31% |
| Eastern Regional | 1,000,000 | 130,000 | 13% |
| Central Regional | 875,000 | 270,000 | 30% |
| Potomac Highlands | 750,000 | 130,000 | 17% |
| Tygart Valley Regional | 1,000,000 | (10,000) | (.01%) |
| Southwestern Regional | 925,000 | ( 6,000) | (.006%) |
| **TOTALS:** | **$13,450,000** | **$3,024,000** | **22%** |

Note: The Corporation (PrimeCare Medical, Inc. presently and Pennsylvania Institutional Health Services formerly) has held these contracts since 1993 (14 years).

West Virginia Division of Juvenile Services:

| Facility (Jail) | Revenues | Gross Margin | Gross Margin % of Revenues |
|---|---|---|---|
| Industrial Home for Youth | $ 835,000 | $ 420,000 | 50% |
| Davis Juvenile Center | 410,000 | 250,000 | 60% |
| Donald R. Koon Juvenile Center | 200,000 | 30,000 | 15% |
| Chick Backbee Juvenile Center | 150,000 | (2,500) | (.01%) |
| Tiger Morton Juvenile Center | 150,000 | (26,500) | (17%) |
| North Central Juvenile Center | 150,000 | 8,000 | .05% |
| Southern Juvenile Detention Ctr. | 150,000 | 14,000 | .09% |
| Gene Spodaro Juvenile Center | 155,000 | 18,000 | 11% |
| Robert Shell Juvenile Center | 150,000 | (10,500) | (.07%) |
| Vicki Douglas Juvenile Center | 70,000 | (8,500) | (.12%) |
| **TOTALS:** | **$2,420,000** | **692,000** | **28%** |

Many of the West Virginia Juvenile and Adult facilities are overcrowded and operating above the capacities cited in the original contracts. When this occurs the Corporation receives additional revenues as a per diem or per day/per inmate amount for this overage. The Corporation is expected to increase all services (nurse, physician, physician assistant and nurse practitioner hours) accordingly with these funds. At the time of the review by corporate operations staff the Corporation was nowhere close to fulfilling its obligations for base services let alone the additional hours required due to overcrowding.

As I continually reminded you these practices are especially egregious considering the level of profits the Corporation was reaping. The Corporation (previously known as Pennsylvania Institutional Health Services, Inc.) founded by you has a history of failure to provide services required by contracts dating back to 1989.

When I was hired in March, 1990, the Corporation was embroiled in an investigation by the Pennsylvania Office of the Inspector General at the request of the Pennsylvania Department of Corrections for failure to provide contractually required physician services and on-site physician specialist services. At that time, you attempted to include physician on-call time in the required hours. I pointed out to you that this was not previously accepted in the early 1990's investigation in Pennsylvania and would not be accepted by the West Virginia corrections systems. Despite my caution, you continued to direct managers in West Virginia to log and document these hours on the provider time records.

As I brought these issues to your attention over the years, my level of authority and access to information lessened at each site where issues arose. You reassigned me from activities that provided direct contact with facilities and clients/wardens and from decision-making processes to duties in the corporate office. Other Vice-Presidents, who did not possess my level of correctional expertise, were given oversight of these contracts.

The Dauphin County prison has never been bid since the Corporation was awarded the contract in 1988 – 19 years ago. The West Virginia Regional Jails have been continuously awarded to the Corporation since 1993 – 14 years ago and the West Virginia Division of Juvenile Services were awarded to the Corporation at their inception several years ago.

The investigation at SCI-Camp Hill along with other events led to the cancellation of Camp Hill and four (4) other large Pennsylvania state prison medical contracts which devastated the Corporation and resulted in the loss of approximately 72% of the Corporation's business. The types of business practices discussed in this correspondence involves 35 to 40% (including the Dauphin county Prison) of the Corporation's current business. All the Corporation's contracts could be in jeopardy when these practices are discovered by the various state and county agencies.

I also pointed out to you that the correctional medical industry is considered professional services which entail the awarding of contracts based on the Corporation's reputation, integrity, character and business practices. The situation in Dauphin County is similar to those found in Berks, Franklin and other Pennsylvania county facilities.

As an officer of the Corporation, I believe it is my obligation to recommend that these transactions be independently audited and appropriate corrective action taken.

Sincerely,

*Richard C. Smith, MS, CCHP*

Richard C. Smith, MS, CCHP
Vice President for Operations

Cc:  Joshua Lock, Esq.,
     Vice President of Legal Affairs and Human Resources
     Frank P. Clark, Esq.

4

# EXHIBIT 3

March 13, 2008

Carl A. Hoffman, Jr., DO, CCHP
President, Corporate Medical Director
PrimeCare Medical, Inc.
3940 Locust Lane
Harrisburg, PA  17109

RE:  Waste and Wrongdoing, York and Berks County Prisons; Previous Job Status and Duties

Dear Dr. Hoffman:

I previously made good faith reports that the company has caused waste and wrongdoing in regard to several contracts with Pennsylvania government entities. I made these reports verbally, and documented the same in writing on January 28, 2008. I continue to find more waste and wrongdoing.

It recently came to my attention that the company has failed to provide to at least two more counties the full complement of psychiatric services required under contracts between the company and the counties. In or about October 2007, the staff psychiatrist assigned to the York County Prison (YCP) terminated employment. The company, however, was contractually obligated to provide a minimum of 20 hours per week psychiatric coverage to YCP. In the absence of the terminated psychiatrist, another psychiatrist was shifted to provide some hours at YCP. The second psychiatrist's hours, however, did not satisfy the company's minimum contractual coverage with YCP; the remaining gap of minimum coverage at YCP that the company should have filled (such as by engaging a *locum tenens* psychiatrist) was instead left uncovered, in violation of the company's contractual obligation.

Furthermore, a psychiatrist shifted to cover some of the YCP obligation had been assigned at the Berks County Prison (BCP), where the company was also contractually obligated to provide minimum coverage of psychiatric services. Shifting the psychiatrist from BCP to YCP also left a coverage gap at the BCP; the company did not engage a *locum tenens* psychiatrist to fill the remaining gap of minimum coverage at BCP.

The YCP population includes a large contingent housed under York County's contracts with the U.S. Marshall's Service and U.S. Immigrations and Customs Enforcement (ICE). The BCP population includes a contingent housed under Berks County's contract with the U.S. Immigrations and Customs Enforcement (ICE).

The company's actions constitute waste and wrongdoing under its contracts with the respective counties. Furthermore, the company's actions also place both counties in likely breach of their obligations under federal contracts with the respective government entities. Again, I urge the company to conduct an independent audit of its transactions with the YCP and the BCP. I also urge the company to make a disclosure to the respective counties with a financial correction of the same. I am attempting earnestly to see that the company prospectively commits to honoring these contracts in all ways. Not correcting these issues will jeopardize the company's integrity,

which will adversely impact the company's business and ultimately affect the job security of our employees.

Further, I reiterate my request to be returned immediately to all job duties I formerly held in 2007.

Sincerely,

Richard C. Smith, MS, CCHP

Vice President for Operations

Cc: File

# EXHIBIT 4

Marcy Hoffman-Schlegel

Jr. Vice President of Human resources

3940 Locust Lane

Harrisburg, PA 1.7109

                        RE: Handicap Accommodations

Dear Ms. Hoffman-Schlegel:

This correspondence is in response to your letter dated February 11, 2008 and received by me February 13, 2008.

I did not indicate that I may require some accommodations to "perform my job," as you state in your letter. Rather, on February 4, I protested that PrimeCare denied me use of a handicap parking space on company premises, notwithstanding the fact that I have legally held a handicap parking placard since 2002 and that Dr. Hoffman himself signed off on my application to PennDOT for the placard. I viewed that action as illegal as well as retaliation for, among other things, my filing of a PHRC complaint against the Company.

Also, on February 4, Dr. Hoffman made several statements to the effect that I am "100%." Although I am not contending that I am "100%," I am able to perform the essential functions of my position. I have stated this view more than once to Dr. Hoffman and others since last summer.

Further, I reiterated the above facts in writing to Dr. Hoffman in writing on February 6, 2008.

To be clear, I have continued damage to my left shoulder and left hand and require the following accommodations:

- Lifting any item heavier than 5 pounds above waist high is not possible. Lifting is limited using my left hand, Right hand lifting is not a problem.
- My left thumb and left index finger have limited range of motion. It is difficult to pick items up with my left hand. My left index finger bends about 50% and is painful when bending. Left middle finger bends approximately 90% but is numb and painful,
- I sustained damage to both heels and feet. My left foot is healing and functional, but partially numb. My right foot is painful, numb and has limited range of motion. There is also swelling in the right foot.
- Walking long distances is possible but slow and painful. Walking short distances is possible although I move slower than average and with a noticeable limp.

- I can navigate steps but must go slowly and use handrails for steadiness.

As you are aware, none of these disabilities affect my job duties. I am able to read, write, speak, travel to various correctional facilities, make presentations to clients (Wardens, County Commissioners, etc.), attend and participate in meetings. If significant walking is involved in an event I need to leave earlier to allow time to get there.

Duties requiring physical labor would be difficult but no one in the corporate office engages in these types of duties with the exception of the Fleet Manager and Director of Purchasing.

There are few inner office functions that I cannot do. The ones that come to mind are changing the 5 gallon water containers on the water cooler and lifting a box of copy paper.

I notice that none of the correspondence sent or hand delivered to me includes my title of Vice President of Operations yet all other staff members' titles are used. Has my status changed? This is very obvious and disrespectful.

Sincerely,

Richard C. Smith, MS, CCHP Vice President for Operations

2-22-08

# EXHIBIT 5



MEDICAL, INC.

The Choice for Quality Correctional Healthcare

February 25, 2008

Richard C. Smith, MS, CCHP
Vice President of Operations
PrimeCare Medical, Inc.
3940 Locust Lane
Harrisburg, PA 17109

> **RE:** **PCM Code of Conduct Violations**

Dear Rick:

On February 3, 2008, you were asked if you had removed any PrimeCare Medical, Inc. financial information (Profit and Loss Statements and Audited Financial Statements) from the corporate office. You responded that you had not. When asked where you obtained the numbers contained in the "whistleblower" letter delivered to Dr. Hoffman and Joshua D. Lock, Esq. on January 28, 2008, you answered that you produced those numbers from "memory" and "off the top of my head."

Thereafter, you were directed to leave the office, search your home for any financial documents which you may have, and return with them to the office. Later that day, you returned with thirty-nine (39) separate items, including many financial records – Profit and Loss Statements and Audited Financial Statements that pertain to PrimeCare Medical, Inc. You delivered these documents to Frank Komykoski and he immediately inventoried these documents, of which a copy is attached. Upon your return, you were asked if the documents included financial records. You repeatedly stated that they did not. When asked the nature of the returned documents, you stated that they were "personal notes."

PrimeCare Medical's Code of Conduct requires, "the highest standards of personal integrity." This policy is meaningless if Vice-Presidents fail to adhere to it. Your conduct on several occasions on February 3, 2008, constitutes an egregious violation of the PrimeCare Medical, Inc. Code of Conduct. For those violations, you are herewith being issued this written reprimand.

Respectfully yours,

Marcy E. Hoffman-Schlegel, MHRM, CCHP
Jr. Vice-President of Human Resources

Attachment

Enclosure (1)

**Inventory of items returned to the Corporate Office on 04 Feb 08 from his home by Richard C. Smith**

| | | |
|---|---|---|
| 1. | PCM, Inc. Policy Acknowledgement Form (unsigned) | |
| 2. | PCM C-07 Combined Leave Guidelines and Operational Procedures Form (unsigned) | |
| 3. | Minutes of the 17th Meeting of the PCM Board of Directors | 09 Sep 99 |
| 4. | Knights of Von Duke Insurance Meeting Minutes | 29 Sep 99 |
| 5. | Resolution #1,2,3,4 not executed for PCM, Inc. Board of Directors | May 00 |
| 6. | Knights of Von Duke Limited Articles of Association (18 pgs) | 10 Sep 99 |
| 7. | Knights of Von Duke Limited Directors Meeting Minutes | 07 Oct 99 |
| 8. | PCM, Inc.Corporate Board Meeting Agenda | 08 May 00 |
| 9. | Waiver of Notice 18th Meeting of the PCM Board of Directors | 08 May 00 |
| 10. | Board of Directors, PrimeCare Medical of West Virginia, Inc. (5 pgs) | 29 Jun 99 |
| 11. | PCM, Inc. Financial End of Month | Dec 06 |
| 12. | PCM, Inc. Financial End of Month | Mar 07 |
| 13. | Seligman and Friedman End of Year Summation Analysis | 31 Dec 05 |
| 14. | Seligman and Friedman End of Year Summation Analysis ((2) Copies) | 31 Dec 04 |
| 15. | PCM, Inc Financial End of Month | Dec 00 |
| 16. | Seligman and Friedman Audited Financial Statement | December 31, 1998 and 1997 |
| 17. | Seligman and Friedman Audited Financial Statement | December 31, 2004 and 2003 |
| 18. | Seligman and Friedman Audited Financial Statement | December 31, 2006 and 2005 |
| 19. | PCM, Inc. Financial End of Month | 31 Dec 03 |
| 20. | Seligman and Friedman Audited Financial Statement | December 31, 1997 and 1996 |
| 21. | PCM, Inc. Finance Department Billing Spreadsheet | 19 Apr 04 |
| 22. | Dunn and Bradstreet Report | 26 Feb 07 |
| 23. | Dunn and Bradstreet Report (copy) | 26 Feb 07 |
| 24. | Weideman and Doughty (Financials 1998) | 27 Jan 99 |
| 25. | Weideman and Doughty (Financials through 30 Sep 99) | 5 Nov 98 |
| 26. | PCM, Inc. Month End Report | 31 Dec 04 |
| 27. | PCM, Inc. Month End Report | 30 Nov 06 |
| 28. | PCM, Inc. Month End Report | 30 Jun 06 |
| 29. | Dunn and Bradstreet Report | 16 Feb 03 |
| 30. | PCM, Inc. Month End Reports | 30 Nov 99 and 31 Dec 00 |
| 31. | PCM, Inc. Month End Report | 31 Oct 06 |
| 32. | PCM, Inc. Month End Report | 31 Jun 06 |
| 33. | Memo to Paul Seibert (PCM, Inc. Income Statement 1st Qtr. 2006) | 31 Mar 06 |
| 34. | PCM, Inc. Month End Report | 30 Sep 06 |
| 35. | PCM, Inc. Month End Report | 30 Nov 99 |
| 36. | Partial Month End | 31 Aug 06 |
| 37. | PCM, Inc. Month End Repot | 28 Feb 07 |
| 38. | Seligman and Friedman Financial Statements | 31 Dec 98 and 97 |
| 39. | PIHS Financial Statement | 13 Aug 93 |

# EXHIBIT 6



The Choice for Quality Correctional Healthcare

February 27, 2008

Richard C. Smith, M.S., CCHP
Vice President of Operations
Hand - Delivered

RE:    **Itinerary, Period 2-27-08 through 3-4-08 Memo**

Dear Mr. Smith:

As outlined on your job duties #13 (Attend Dinners / Meetings and Affairs important to the Corporation) does <u>not</u> apply to your itinerary memo for 2-27-08 through 3-4-08. My response to this item on my letter dated February 20, 2008 **Re: Job Duties** states that this #13 was deferred until completion of an internal investigation of allegations contained in your letter of January 28, 2008 is completed!

Thus, you are **not** permitted to visit Wardens, **not** permitted to call Wardens (or any other Jail / Prison / Juvenile Facility's employees) of any and all PrimeCare Medical, Inc. contracts unless explicitly directed by me in writing.

The handwritten description of the duties which you were performing for PrimeCare Medical, Inc. prior to the time you left for your surgery makes **no** mention of meetings with Pennsylvania Wardens or the West Virginia Regional Jail Authority as you propose to conduct in your 2-26-08 itinerary memo. Indeed, the job description which you prepared suggests **only** that you are "available to advise PCM clinical and operational staff on issues where there are conflicts between prison operations/security staff and PrimeCare Medical staff", and to "Review various non-medical, problematic situations that occur at the contract sites . . ." **No** advice has been sought and **no** problems currently exist at any of the PrimeCare Medical, Inc. Facilities which you mention which would require your intervention. Therefore, **no** need exists to, in the words of your job description, "advise . . . on any and all issues that have a significant impact on the Company's integrity, reputation and continued viability.".

To the extent that you interpret the entry on your job description to mean that, prior to your surgery, you were "Attend[ing] various professional meetings" to include visiting various facilities to speak with their Wardens, I fear that either I misunderstood you or you misunderstood my February 20, 2008 letter discussing the restoration of your job responsibilities.

Mr. Smith                                                                    Page 2 of 2
February 27, 2008

     As you know, for a considerable time period, various PrimeCare Medical, Inc. personnel (Regional Managers, Directors, Junior Vice Presidents and Vice Presidents) have been assigned direct oversight responsibilities for each of our facilities.  As you indicated in your job description, you had **no** such duties.

     Nonetheless, it would be helpful in determining if your proposed activity is necessary, for you to advise me of the last time and for what reason you visited the facilities mentioned in your 2-26-08 memo, as well as the Regional Jail Authority, and the purpose for your proposed visits.

               Sincerely,

               Carl A. Hoffman, Jr., D.O.,CCHP
               President and Corporate Medical Director

CC:    Theresa Marie Hoffman, Executive Vice President
       Joshua D. Lock, Esq., Vice President and Corporate Counsel

# EXHIBIT 7

March 14, 2004

Carl A. Hoffman, Jr., DO, CCHP
President and Corporate Medical Director
PrimeCare Medical, Inc.
3940 Locust Lane
Harrisburg, PA 17109

Dear Dr. Hoffman:

I hereby give you notice that I regard myself as constructively discharged from
employment with PrimeCare Medical, Inc. effective today, Friday March 14, 2008. I
have attempted to resolve the intolerable work conditions that the company has imposed
on me. My efforts to do so are unavailing. This letter is not intended to document every
instance of intolerable conditions directed at me. I will provide a more detailed listing of
the same as warranted. Nonetheless, I have experienced the following:

I took a medical leave beginning in May 2007. Despite the fact that I was physically able
to return to my duties as Vice President of Operations, you specifically mandated that I
stay off work "until I was 100%."

I persisted with you over several months that I was physically able to perform the
essential functions of my position and thus resume my duties. Your response in
December 2007 was to propose an employment agreement that obligated me to vacate the
company headquarters and accept employment terminable at will under a title of
consultant, and forfeit my health benefits.

I refused to accept those terms. After you advised me in writing to provide a doctor's
return-to-work notice, I provided the same and returned on January 28, 2008. The
company should have returned me to my former position, but did not. My former position
entailed substantial day-to-day responsibility for the company's operations. Upon my
return, I was essentially removed from duties that required decision-making or the
exercise of judgment or discretion. The company assigned me almost no substantive
duties. The company banned me from contacting client representatives and/or
employees/subcontractors at all PrimeCare Medical contract sites. The employee who
directly reported to me was no longer assigned to me. My office was moved from a
private workspace that reflected the prestige and responsibility of my position as Vice
President of Operations, to a significantly smaller space near the reception desk
containing Spartan furnishings.

The company unreasonably changed my working conditions to create an intolerable
working climate to compel my leaving. The intolerable working conditions constitute
retaliation and discrimination in violation of the law.

# EXHIBIT 8

May 07 08 12:04p        Rick Smith                                    717-741-7437        p.2

**Subject:**  Status of Richard C. Smith

**Date:**  Fri, 25 Apr 2008 15:04:02 -0400

**From:**  'Frank Komykoski, MBA, CCHP" <fkomykoski@primecaremedical.com>

"Amy Kahn" <primecare1@co.franklin.pa.us>, "Amy McNaughton" <abavington@primecaremedical.com>, "Amy Wilt" <awilt@primecaremedical.com>, "Annette Smithbower" <asmithbower@primecaremedical.com>, "Barb Parker" <bparker@primecaremedical.com>, "Barbara Peters" <bpeters@primecaremedical.com>, "Becky Stoner" <bstoner@primecaremedical.com>, "Bonnie Bair" <bbair@primecaremedical.com>, "Brenda Huyett" <bhuyett@primecaremedical.com>, "Brent W. Bavington, MBA, CCHP" <bwbavington@primecaremedical.com>, "Carrie Jackson" <cjackson@primecaremedical.com>, "Chad Hott, RN" <chott@primecaremedical.com>, "Charlotte Weldon" <cweldon@primecaremedical.com>, "CRJ : Health Services Admin" <medical_crj@wvrja.state.wv.us>, "Cyndi Haskins" <chaskins@primecaremedical.com>, "Cynthia Shelton, RN" <CShelton@countyofberks.com>, "Dana Brenneman" <primecareycp4@verizon.net>, "Dawn M. Rider, LPN" <dmrider@co.centre.pa.us>, "Dawn White, RN" <drkmedical@djs.state.wv.us>, "Deb Cook, LPN" <dcook@adamscounty.us>, "Denise Jemiola, RN" <djemiola@primecaremedical.com>, "Derek Hughes, CCHP" <dhughes@primecaremedical.com>, "Donna Venesky, LPN" <DVenesky@dauphinc.org>, "Emilia Caputo, RN" <ECaputo@northamptoncounty.org>, "Drue Wagner, M.D." <orion63@gmail.com>, "Enos Martin, M.D" <enosdmartin@comcast.net>, "Erik Von Kiel, D.O." <erikvonkiel@lehighcounty.org>, "ERJ : Health Services Admin" <medical_erj@wvrja.state.wv.us>, "Frank Komykoski, MBA, CCHP" <fkomykoski@primecaremedical.com>, "FRCP : Health Services Admin" <primecare@co.franklin.pa.us>, "Jack Esworthy" <jesworthy@primecaremedical.com>, "James Hockenberry" <jhockenberry@primecaremedical.com>, "Jamie Doyle, RN" <jdoyle@primecaremedical.com>, "Janet Ickes" <medicalassistant@dauphinc.org>, "Jean Burns, RN" <jburns@washco-md.net>, "Jennifer Dittman" <jdittman@midatlanticyouth.com>, "Jennifer Keller" <JKeller@northamptoncounty.org>, "Jennifer Mlosi" <primecareycp8@verizon.net>, "Jennifer Mroz" <jburch@rcn.com>, "Jess Custer, RN" <jcuster@co.cambria.pa.us>, "Jesse Kirsch" <jtkirsch@gmail.com>, "Jessica Rineer" <jrineer@primecaremedical.com>, "JFCP : Health Services Admin" <pcmadmin@jeffersoncountypa.com>, "Joshua D. Lock, Esquire" <jlock@primecaremedical.com>, "Josie Bahnick" <josiebahnick@lehighcounty.org>, "Karen Murphy, RN" <kmurphy@primecaremedical.com>, "Kathy Nicholson" <knicholson@primecaremedical.com>, "Kelly Ehrich, MBA, CCHP" <kehrich@primecaremedical.com>, "Kelly Rhoads, LPN, CCHP" <krhoads@primecaremedical.com>, "Kevin Brown, RN" <kbrown@primecaremedical.com>, "Kevin Frantz, RN" <primecare3@comcast.net>, "Kim Goodwin, LPN" <kgoodwin@midatlanticyouth.com>, "Krista Coble, RN" <kcoble@primecaremedical.com>, "Lara Slimmer" <laraslimmer@lehighcounty.org>, "LCCF : Health Services Admin"

**To:**  <primecare34@aol.com>, "Liana Altemus" <primecarem06@aol.com>, "Linda Bernard, RN, CCHP" <lbernard@primecaremedical.com>, "Lisa Smith, RN" <primecare53@aol.com>, "Loretta R. Stoner" <lstoner@primecaremedical.com>, "Marc Palovitz, CCHP" <mpalovitz@primecaremedical.com>, "Marcie Gilmour, RN" <mgilmour@countyofberks.com>, "Marcy E. Hoffman-Schlegel, MHRM, CCHP" <mhoffman@primecaremedical.com>, "Maxine Bella, RN, BSN, CCHP" <mbella@primecaremedical.com>, "Mike Baldwin, LPN" <primecareycp5@verizon.net>, "Nancy Young" <nyoung@primecaremedical.com>, "NCRJ : Health Services Admin" <medical_ncrj@wvrja.state.wv.us>, "NRJ : Health Services Admin" <medical_nrj@wvrja.state.wv.us>, "Patricia A. Sass" <psass@primecaremedical.com>, "Patricia Bunting, RN, CCHP" <pbunting@pikepa.org>, "Paul Navarro, RN, BSN" <pnavarro@primecaremedical.com>, "Paula Dillman" <PaulaDillman@Yahoo.com>, "Paula Haigh, LSW" <phaigh@primecaremedical.com>, "Penney McKinley, RN, CCHP" <penneyperdue@yahoo.com>, "PHRJ : Health Services Admin" <medical_phrj@wvrja.state.wv.us>, "Rachel McGill" <rmcgill@primecaremedical.com>, "Rebecca Davis, RN, BSN, CCHP" <rdavis@primecaremedical.com>, "Renee Christian, RN" <tmmedical@djs.state.wv.us>, "Robert Davis, MD" <robedavis@state.pa.us>, "Robert Nichols" <rnichols@primecaremedical.com>, "Roberta Mottola" <rmottola@primecaremedical.com>, "Rod Lake" <rlake@primecaremedical.com>, "Ron Dellarose, RN" <primecarem04@aol.com>, "Sandra Hawkins" <SHawkins@countyofberks.com>, "Sandra Ulerick, CCHP" <sulerick@primecaremedical.com>, "Sarah Costulas" <scostulas@primecaremedical.com>, "SCRJ : Health Services Admin" <medical_scrj@wvrja.state.wv.us>, "Sheila Shaffer" <sshaffer@primecaremedical.com>, "SRJ : Health Services Admin" <medical_srj@wvrja.state.wv.us>, "SWRJ : Health Services Admin" <medical_swrj@wvrja.state.wv.us>, "Tammy Klilan, LPN, CCHP" <tkilan@adamscounty.us>, "Tami Featherlin, BSN" <tfeatherlin@primecaremedical.com>, "Tammy Landis, LPN" <cbmedical@djs.state.wv.us>, "Tanya Schisler, PA-C" <schislert@comcast.net>, "Tara Stonesifer" <tstonesifer@primecaremedical.com>, "Tiffany Cinko, LPN" <primecare@co.somerset.pa.us>, "Tim Bowen" <tbowen@primecaremedical.com>, "Timothy C. Hoffman" <tchoffman@primecaremedical.com>, "Todd W. Haskins, RN, CCHP" <thaskins@primecaremedical.com>, "Tom Toolan, LPN, CCHP" <medicaladm@dauphinc.org>, "Tom Webber" <tjw@goldbergkatzman.com>, "Traci Morris, LPN" <gsnurse@djs.state.wv.us>, "TVRJ : Health Services Admin" <medical_tvrj@wvrja.state.wv.us>, "Victoria Gessner, MD" <v_gessner@msn.com>, "Wendy Johnson, LPN" <wjohnson@co.monroe.pa.us>, "William W. Bavington, M ed" <wbavington@msn.com>, "WRJ : Health Services Admin" <medical_wrj@wvrja.state.wv.us>, "YCJDC : Health Services Admin" <snpetershelm@york-county.org>

**CC:**  "Carl Hoffman, Jr., D.O., CCHP" <choffman@primecaremedical.com>, "Theresa Hoffman" <thoffman@primecaremedical.com>

All,

    This is to inform you that Richard C. Smith is no longer associated in any capacity with PrimeCare Medical, Inc., PrimeCare Medical of West Virginia, Inc. or its subsidiaries. Mr. Smith walked off the job as of March 14, 2008.

    At this point it should be considered that Mr. Smith's interests are adverse to ours. Please report any contact you have with Mr. Smith or information you gain of him contacting our customers / clients to me directly.

If you have any questions please contact me. As more information becomes available we will share the same with you on a need to know basis.

Frank

*F. J. Komykoski, MBA, CCHP*
Vice President of Operations
PrimeCare Medical, Inc.
3940 Locust Lane
Harrisburg, PA 17109
(717) 545-5787
(800) 245-7277
FAX (717) 651-1866