IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD C. SMITH, | : | No. 1:08-CV-0366 |
| Plaintiff | : | |
| | : | |
| vs | : | Civil Action – Law |
| | : | (Electronically filed) |
| PRIME CARE MEDICAL, INC., | : | |
| CARL A. HOFFMAN, JR., D.O., | : | |
| THERESA M. HOFFMAN, | : | |
| JOSHUA D. LOCK, MARCY | : | |
| HOFFMAN-SCHLEGEL, FRANK | : | |
| KOMYKOSKI, and KNIGHTS OF | : | |
| VON DUKE, LTD. | : | Jury Trial Demanded |
| Defendants | : | |

# BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE

NOW COMES Plaintiff, Richard C. Smith, by and through his counsel, Clark & Krevsky, LLC, who files the following Brief in Opposition to Defendants' Motion to Strike:

## COUNTER-HISTORY OF THE CASE

Before the Court is Defendants' Motion to Strike Pursuant to Rule 12(f) (the "Motion").

The Plaintiff in this action is Richard C. Smith ("Smith"), a former employee of Defendant PrimeCare Medical, Inc. ("PCM") Smith brings his action against PCM; its principal, Carl Hoffman, D.O.; several employees of PCM; and a

1

corporation controlled by Defendant Carl Hoffman. Smith's claims arise under the Family and Medical Leave Act, 29 U.S.C. §2601, *et seq.*, the Pennsylvania Whistleblower Act, the Pennsylvania Wage Payment and Collection Law, and Pennsylvania common law theories that relate to Smith's employment, its termination and/or actions occurring thereafter.

The Complaint was filed on or about July 25, 2008. On August 14, Defendants filed the Motion, seeking that multiple averments of the Complaint be stricken. On August 28, 2008, Defendants filed a brief in support of their Motion. This brief stands in opposition to Defendants' Motion.

**COUNTER-STATEMENT OF FACTS**

The case arises in part out of Smith's whistleblower claims against PCM, its principal and several key employees of PCM. The disputed averments all pertain to Smith's whistleblower claims.

PCM at all relevant times contracted with government correctional facilities to provide inmate health care services. [Complaint, ¶ 15]. Smith began employment at PCM (or its predecessor) in 1990. [Complt., ¶10].

From the beginning of Smith's employment, PCM operated under at best a culture of indifference to compliance issues, and at worst an actual embrace of non-compliance. On Smith's arrival at PCM, compliance issues placed PCM in enormous jeopardy of losing contracts with public bodies. These issues included a Pennsylvania

2

Office of Inspector General investigation of irregularities under PCM's contract at SCI-Camp Hill, Hoffman's improper alteration of medical records, and an inmate death at SCI-Camp Hill. [Complt., ¶19-23]. These issues could be directly traced to dishonest and other behaviors led by Hoffman that included knowingly shortchanging prisons and altering medical records. The medical record alteration links factually (if not causally) to an inmate death in the SCI-Camp Hill infirmary; the alteration suggested that the deceased inmate "received even more attentive care than he actually received." [Complt., ¶ 25]. The culture of indifference and/or non-compliance placed the company at risk of losing business from public bodies. [Complt., ¶ 23, 27].

Smith set out to correct the culture. He implemented integrity into the company's operations. [Complt., ¶ 32-33]. He monitored and enforced contract compliance. [Complt., ¶ 34]. The company's business grew, and Smith rose through PCM to become its Vice-President of Operations. [Complt., ¶ 35-36].

Over time, however, Defendant Carl Hoffman backslided into behaviors that brought a return of the old culture. He pushed Smith into the background, out of operations, and hired cronies and persons of minimal qualifications to take over operations. [Complt., ¶ 41-51].

Under the cronies' eyes and the willingness of Defendant Hoffman to look the other way again, PCM returned to its former ways of cutting corners. PCM

authorized a non-physician employee to make clinical decisions, contrary to law. [Complt., ¶ 60]. PCM failed to staff inmate clinics in accordance with its contracts, yet billed governments and collected government payments as if those clinics were fully staffed. [Complt., ¶ 54-59]. PCM created a contractual loophole to dishonestly bill governments for services and medications not previously billed. [Complt., ¶ 63]. Staff engaged in dishonest record keeping. [Complt., ¶ 54-56, 59].

Smith raised specific concerns that PCM was repeating past errors and risking a return to the days when its public contracts were in jeopardy. He attempted first to correct these improprieties by discussing them with Defendant Carl Hoffman, to no avail. [Complt., ¶ 59-64]. Because Smith in the past found that the general counsel properly stopped Hoffman and others from using the PCM internal telephone system to eavesdrop on staff conversations without the staff's knowledge, Smith spoke to the general counsel about his concerns. [Complt., ¶ 65]. This time, however, the general counsel confessed to Smith that he himself was impaired from taking action to intercede with Hoffman: the general counsel confessed that he was having personal financial difficulties and that Defendant Carl Hoffman was providing loans and/or other funds to the general counsel to address his personal financial difficulties and that the counsel's financial obligations to Hoffman rendered him unable to support Smith, even as to issues of waste and wrongdoing. [Complt., ¶ 66].

These events were the precursor to Smith's verbal notice in December 2007, and his written reports starting in January 2008, of waste and wrongdoing at PCM. [Complt., ¶ 87, 93-94]. Smith's reports directly resulted in retaliation from Defendants that he began to experience starting on or about January 28, 2008. [Complt., ¶ 91]. This Complaint then followed.

## COUNTER-STATEMENT OF QUESTION INVOLVED

1. Have Defendants failed to meet their burdens to show both that the challenged averments have "no possible relation to the matter at issue" and that they cause "prejudice to the moving party?"

[Affirmative answer suggested by Plaintiff].

## ARGUMENT

**I. DEFENDANTS HAVE FAILED TO MEET THEIR BURDENS TO SHOW BOTH "NO POSSIBLE RELATION TO THE MATTER AT ISSUE" AND "PREJUDICE TO THE MOVING PARTY"; DEFENDANTS' MOTION TO STRIKE SHOULD BE DISMISSED.**

The averments challenged by Defendants meet the legal standard for inclusion in Smith's Complaint. The challenged averments are reasonably related to Smith's whistleblower claims. Defendants have failed to show any prejudice to warrant that any averment be stricken. The Motion should be dismissed.

Defendant has not established a basis to strike the challenged paragraphs of the Complaint. Federal Rule of Civil Procedure 12(f) provides that the court "may order stricken from any pleading … any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). The standard for striking under Rule 12(f) is "strict."

*Lakits v. York*, 258 F. Supp. 2d 401, 409 (E.D. Pa. 2003) (citations omitted). Courts usually view such motions to strike "with disfavor." *United States v. Marisol, Inc.*, 725 F. Supp. 833, 836 (M.D. Pa. 1989). Although courts possess considerable discretion in weighing Rule 12(f) motions, such motions are generally denied unless the material bears no possible relation to the matter at issue and may result in prejudice to the moving party. *See, e.g.*, *Miller v. Group Voyagers, Inc.*, 912 F. Supp. 164, 168 (E.D. Pa. 1996); *citing* *North Penn Transfer, Inc. v. Victaulic Co. of Amer.*, 859 F. Supp. 154, 158 (E.D. Pa. 1994).

"Partly because of the practical difficulty of deciding cases without a factual record it is well established that striking a pleading should be sparingly used by courts. It is a drastic remedy to be resorted to only when required for the purposes of justice." *Krisa v. The Equitable Life Assurance Society*, 109 F. Supp. 2d 316, 319 (M.D. Pa. 2000), *citing* *United States v. Consolidation Coal Co.*, 1991 WL 333694 at *1 (W.D. Pa., July 5, 1991).

Defendants fail to meet the two-part standard, "no possible relation to the matter at issue" and "prejudice to the moving party." Defendants' Brief makes an inadequate case to establish that its challenged averments lack a "possible relation" to the matter at issue. Defendants provide absolutely no basis to support a claim of prejudice.

The averments at issue cannot be defeated by the "no possible relation" prong. Upon Plaintiff's arrival at PCM, the enterprise fostered at best a culture of indifference to compliance issues, and at worst a culture of non-compliance. PCM, a public contractor, was engaged in a pattern of waste and wrongdoing at government entities where it was providing contracted services. The waste and wrongdoing included short-changing the government and falsifying records.

Smith was a change agent to correct the corporation's bad culture. He implemented integrity into the company's operations. He monitored and enforced contract compliance. Because the company prospered with his direction, Smith advanced in the organization to the point that he became Vice-President of Operations. Defendant Carl Hoffman, himself a key element of the old culture, over time pushed the Plaintiff into the background at PCM. Defendant Hoffman at the same time brought in lesser-qualified persons to PCM, and gave them increasing control over the company's operations. The culture of indifference and non-compliance returned. Smith attempted to step forward and stop the corporation's slide back to its indifferent and non-complying ways. Smith even cited examples from the past bad culture in making his point to Defendant Carl Hoffman that waste and wrongdoing had returned.

The averments that Defendants challenge all relate to Plaintiff's knowledge of waste and wrongdoing at PCM and why Smith spoke out against waste and

wrongdoing. The waste and wrongdoing immediately at issue in his whistleblower claims are a repeat of improprieties that Smith corrected in years past. The improprieties recurred in part because Defendant Carl Hoffman, himself at least a passive participant in past waste and wrongdoing, failed to heed Smith's warnings that the corporation was returning to its former culture. Thus, the allegations that Defendants challenge in Parts B, C and D of their brief go to PCM's past culture of indifference, if not noncompliance. The allegations challenged in Parts A and E (the first Part E[1]) of Defendants' brief go to the fact that the culture returned because Defendant Carl Hoffman over time relied increasingly on persons with improper credentials to manage PCM's operations. The lone averment challenged in the second Part E of Defendants' brief is material to Smith's attempt to use reason to persuade Defendant Carl Hoffman that PCM had regressed to its former waste and wrongdoing behaviors.

These averments are entirely appropriate for a whistleblower case. In ***U.S. ex rel. Ackley v. International Business Machines Corporation***, 110 F. Supp. 2d 395 (D. Md. 2000), whistleblower averments were not stricken under Rule 12(f) where the averments were relevant: to understand how and when the employee may have

---

[1] There are two Parts "E" in Defendants' brief: the first one challenges Plaintiff's averments as to lesser-qualified persons and cronies of Defendant Carl Hoffman that were given an increased role in the corporation; the second one challenges Paragraph 65 of the Complaint, wherein Smith went to PCM's general counsel to stop Defendant Hoffman and others from improperly eavesdropping on telephone calls.

been retaliated against; to know why the retaliation occurred; and to learn what he was complaining about, when, and to whom. Smith's averments meet the same standard of relevance.

Furthermore, Smith's averments are relevant as to Defendant's course of conduct. In that regard, "[a]llegations in a complaint which supply background or historical material or which are of an evidentiary quality will not be stricken unless unduly prejudicial to defendant." **Fuchs Sugars & Syrups, Inc., et al., v. Amstar Corporation,** 402 F. Supp. 636, 637-638 (S.D. NY 1975), *citing* **South Side Drive-In Co. v. Warner Bros. Pictures Dist. Corp.**, 30 F.R.D. 32, 34 (E.D. Pa. 1962).

Because the averments are relevant, and because Defendant has made no showing of prejudice, Defendants' Motion to Strike must fail.

Plaintiff is constrained to note the irony that Defendants have filed and briefed this Rule 12(f) Motion separate from their Rule 12(b)(6) Motion, wherein Defendants attack the sufficiency of Plaintiff's FMLA retaliation pleading. Defendants' Rule 12(b)(6) brief essentially contends that the U.S. Supreme Court, in **Bell Atlantic Corp. v. Twombly**, 550 U.S.___, 127 S.Ct. 1955 (2007), established a heightened pleading standard. In challenging Plaintiff's FMLA retaliation claim, Defendants cite language from *Twombly* to the effect that a complaint:

> "must be dismissed if it fails to allege 'enough facts to state a claim to relief that is plausible on its face.' The court is not obligated to accept inferences unsupported by the facts set out in the complaint…. and is not required to

accept legal conclusions framed as factual allegations." *Id*. at ___, 127 S.Ct. at 1974 (Citations omitted).
[Doc. 8, at p.3]

At least one commentator has in fact theorized that *Twombly* may move toward a fact-pleading standard under the Federal Rules. *See*, PLEADING STANDARDS AFTER *BELL ATLANTIC CORP. V. TWOMBLY*, 93 Virg. L. Rev. 135 (2007). Whether *Twombly* has such impact (Smith disputes this for reasons stated in response to the 12(b)(6) motion), Defendants are at least attempting to limit strictly the inferences to be drawn to establish Smith's FMLA retaliation claim. At the same moment, in the same case but in a different pleading, Defendants challenge Smith because he places whistleblower averments in the context of relevant historical facts rather than by relying on inferences or legal conclusions that are not expressly stated in the Complaint; in other words, Smith is doing with his whistleblower claims exactly what Defendants seemingly say *Twombly* requires.

## CONCLUSION

  Defendants' Motion to Strike should be denied.

                 Respectfully Submitted,

                 CLARK & KREVSKY, LLC

Dated: September 15, 2008        By: s/Frank P. Clark
                   Frank P. Clark
                   Attorney I.D. PA #35443
                   20 Erford Road
                   Suite 300A

                                                Lemoyne, PA  17043  
                                                (717) 731-8600  
                                                (717) 731-4764 (fax)  
                                                FPC@Clark-Krevskylaw.com

                                                Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I, FRANK P. CLARK, do hereby certify that I served a true and correct copy of the foregoing **Brief in Opposition to Defendants' Motion to Strike** upon the following be1ow-named party by email today, September 15, 2008.

SERVED UPON:

Michael J. Crocenzi
Thomas J. Weber
Thomas E. Brenner
GOLDBERG KATZMAN, P.C.
P.O. Box 1268
Harrisburg, PA 17108

Dated:     <u>September 15, 2008</u>          <u>s/ Frank P. Clark</u>
                                               Frank P. Clark