IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RICHARD C. SMITH,** | : | |
| | : | |
| **Plaintiff** | : | **Civil Action No. 1:08-CV-1397** |
| | : | |
| v. | : | **(Chief Judge Kane)** |
| | : | |
| **PRIMECARE MEDICAL, INC. et al** | : | |
| | : | |
| **Defendants** | | |

## MEMORANDUM

Before the Court are Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) and Motion to Strike pursuant to Rule 12(f). (Doc. Nos. 5; 6.) The motions are fully briefed and ripe for disposition. For the following reasons, the motion to dismiss will be denied and the motion to strike will be granted in part and denied in part.

## I.   MOTION TO DISMISS

The Plaintiff Richard C. Smith ("Smith") has brought this action for claims arising under the Family and Medical Leave Act[1] ("FMLA"), the Pennsylvania Whistleblower Law,[2] the Pennsylvania Wage Payment and Collection Law, and other assorted state law causes of action. (Doc. No. 12 at 2.) His claims arise from the Defendants' conduct during his employment at PrimeCare Medical Inc., ("PCM") and subsequent discharge from his position. (Doc. No. 12 at 2.) The Defendants' motion to dismiss deals solely with the Plaintiff's FMLA claim, so the Court will largely recount only the allegations with regard to that claim in this section of the opinion. The allegations attacked by the Defendants' motion to strike will be considered

---

[1] 29 U.S.C. § 2601 *et seq*.

[2] 43 Pa. Cons. Stat. § 1421*et seq*.

separately.

### A. Factual Background

During the relevant time period, Smith was employed by PCM as Vice President of Operations. (Doc. No. 1 ¶ 32.) On May 10, 2007, he underwent gastric bypass surgery. (Id. ¶ 67.) Prior to his surgery, Smith advised PCM that he expected to need three weeks to recover from the surgery, and PCM explicitly approved him for two weeks of leave. (Id. ¶ 68.) PCM did not advise Smith of his rights to take leave under the FMLA at any time before or after his surgery. (Id. ¶ 69; 73.) Complications during surgery caused Smith additional injuries, and he was required to undergo extensive post-operation treatment even after his discharge from the hospital on May 20, 2007. (Id. ¶ 70-71.) Defendant Carl Hoffman ("Hoffman"), PCM's President and Chief Medical Officer (Id. ¶ 4), visited Smith shortly after he was discharged and told him "I'm paying your full salary. You don't have to use leave. I want you to stay off work until you are 100%. Don't worry about your job. You know you will always have your job as I've always promised you." (Id. ¶ 72.) Smith first advised Hoffman that he was able to resume his essential job functions in July 2007. (Id. ¶ 75-76.) Despite Smith's desire to return to work, Hoffman told him that he wanted him to stay off until he was "100%." (Id. ¶ 76.) This arrangement is alleged to have continued over the course of several months, with Smith asking to start back to work again and Hoffman repeating that Smith could not return until he was "100%." It seems that Smith was paid his full salary for the whole time that he was off-work. (Doc. No. 12 at 3 n.2.) Finally, in December 2007, Smith and Hoffman met to discuss Smith's return to work. (Id. ¶ 82.) Hoffman suggested an alternative employment arrangement with PCM for Smith, but no new contract was set-out during the meeting. (Id. ¶ 82-83.) PCM apparently

abandoned the proposal set out by Hoffman at the meeting, however, because yet another employment arrangement was proposed to Smith in writing on December 19, 2007. (Id. ¶ 86.) Smith rejected this new contract because it was far less favorable; it would have reduced his salary, eliminated his original position, and caused him to release any claims he might have against PCM. (Id. ¶ 86-87.) Thereafter, PCM informed Smith that he could return to his original position as Vice President with a note from his doctor. (Id. ¶ 88-89.) Even though Smith returned to work as instructed on January 28, 2008, PCM took several actions that amounted to a demotion for Smith. (Doc. No. 91.) As a result of these actions, Smith advised PCM on March 14, 2008, that he regarded himself as having been constructively discharged. (Id. ¶ 120.)

### B.  Standard of Review

The Defendants have brought this motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

The Supreme Court's recent opinion in Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007), has altered the standard of review for a motion to dismiss pursuant to Rule 12(b)(6). Phillips v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008). In construing the Rule 12(b)(6) standard generally, the Court required the plaintiff to provide more than a formulaic recitation of a claim's elements that amounted to mere labels and conclusions. Twombly, 127 S. Ct. at 1964-65. Additionally, the Court held that the complaint's "factual allegations must be enough to raise a right to relief above the speculative level." Id.  The Third Circuit has held that this language in *Twombly* applies generally to all motions brought under Rule 12(b)(6). Phillips, 515, F.3d at 232. Despite *Twombly*, it is still true that "courts accept all factual allegations as

true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Id. (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

### C. DISCUSSION

The FMLA was enacted to balance the demands of the workplace with the needs of employers and to entitle employees to take reasonable leave for medical reasons. 29 U.S.C. § 2601(b). To accomplish these goals, the act provides that an eligible employee is entitled to 12 workweeks of leave during any given 12-month period for certain qualifying events, including a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). It is unlawful for an employer to interfere with, restrain, or deny an employee's exercise or attempt to exercise this right under the FMLA. 29 U.S.C. § 2615(a)(1). The Third Circuit has also recognized a claim for employees who have been discharged or discriminated against in retaliation for having taken FMLA leave under 29 U.S.C. § 2615(a)(2) and subsection 825.220(c)[3] of the FMLA implementing regulations. See Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 146 (3d Cir. 2004).

While the Plaintiff has asserted both interference and retaliation in the complaint, (Doc.

---

[3] Subsection 825.220(c) provides:

> An employer is prohibited from discriminating against employees or prospective employees who have used FMLA leave. For example, if an employee on leave without pay would otherwise be entitled to full benefits (other than health benefits), the same benefits would be required to be provided to an employee on unpaid FMLA leave. By the same token, employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under "no fault" attendance policies.

29 C.F.R. § 825.220(c) (1995).

No. 1 ¶¶ 144-45), the Defendants have challenged only the retaliation aspect of the FMLA claim with the motion to dismiss. (Doc. No. 5.) The Defendants rely on Conoshenti, 361 F.3d at 146-47, for the proposition that the Plaintiff must show that "he took an FMLA leave, (2) he suffered an adverse employment decision, and (3) the adverse decision was causally related to his leave" (Doc. No. 8 at 3). Defendants argue that this showing was not met because "Smith has failed to even plead a prima facie case of retaliation . . . because he never alleges that he took FMLA leave." (Id.) Smith counters that the *Conoshenti* elements are not appropriate to scrutinize the complaint on a motion to dismiss because the court in *Conoshenti* was articulating an evidentiary burden shifting standard just as in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). (Doc. No. 12 at 6.) The prima facie elements and burden shifting framework in *McDonnell Douglas* are typically used in employment discrimination cases, but have also been used to analyze a retaliation claim under the FMLA. See e.g., Bearly v. Friendly Ice Cream Corp., 322 F. Supp. 2d. 563, 571 (M.D. Pa. 2004); Lepore v. Lanvision Systems, Inc., 113 Fed. Appx. 449, 453 (3d Cir. 2004).

As the Supreme Court has explained, a prima facie case under *McDonnell Douglas* is an evidentiary standard and not a pleading requirement because it can vary from case to case. Makky v. Chertoff, 541 F.3d 205, 215 (3d Cir. 2008) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 (2002)). Therefore, while the elements articulated in *Conoshenti* were appropriate in that case for analysis of a motion for summary judgment, they are not appropriate to judge the Plaintiff's complaint. Further, the Court agrees with the Plaintiff that the FMLA claim falls under the lenient pleading requirements of Rule 8(a)(2) requiring only a short and plain statement of the claim showing that the pleader is entitled to relief. The complaint still must

5

state a claim upon which relief can be granted, however, and the allegations must be enough to raise this right to relief above a speculative level.  See Twombly, 127 S. Ct. at 1964-65.

Here, Smith has specifically alleged (as an alternative or in addition to his interference claim) that the Defendants discriminated and retaliated against him as a result of "his use of FMLA leave or attempt to use FMLA leave." (Doc. No. 1 ¶ 145.)  Smith has also sufficiently alleged that he qualifies for protection under the FMLA, stating that: Defendants are an employer within the meaning of the statute, Smith had a serious health condition within the meaning of the statute, and that Smith is an eligible employee within the meaning of the statute." (Doc. No. 1 ¶ 127-129.)

The Defendants argue that "[t]here is also absolutely no evidence that Smith even attempted to use FMLA leave." (Doc. No. 8 at 4.)  The Plaintiff does not need to present any evidence on a motion to dismiss pursuant to 12(b)(6).  The complaint sufficiently alleges that Smith used or attempted to use FMLA leave.  An employee seeking leave under 29 U.S.C. § 2612(a)(1)(D) must "provide the employer with not less than 30 days' notice, before the date the leave is to begin, of the employee's intention to take leave under such subparagraph . . . ." 29 U.S.C. § 2612(e)(2)(B).  The Third Circuit has made it clear that when providing such notice, the employee need not use any "magic words" and that "an employee who does not cite to the FMLA or provide the exact dates or duration of leave requested nonetheless may have provided his employer with reasonably adequate information under the circumstances to understand that the employee seeks leave under the FMLA." Sarnowski v. Air Brooke Limousine, Inc., 510 F.3d 398, 402 (3d Cir. 2007).

Here, Smith alleges that he "advised PCM in advance of his surgery and expected to

require approximately three weeks leave to recover . . . ." (Doc. No. 1 ¶ 68.)  He underwent surgery on May 10, 2007 (Doc. No. 1 ¶ 67), and though complications unexpectedly extended his recovery, he alleges that he only required leave until July 2007 (Doc. No. 1 ¶ 74), which is within the protected 12 week time-limit on FMLA leave.  As such, construing the complaint favorably to the Plaintiff, the allegations are enough to warrant the inference that Smith may have sought to use his protected FMLA leave.

It seems that the Defendants take issue with the retaliation allegations because they are somewhat inconsistent with Smith's FMLA interference claim brought under 29 U.S.C. § 2615(a)(1).  For instance, the Defendants argue that "[i]n his Complaint, Smith makes it very clear that the Defendants never offered him FMLA leave" and "[a]ccording to Smith, PCM never mentioned Smith using FMLA leave."  (Doc. No. 8 at 4.)  It is true that there may be some inconsistency between the interference and retaliation claims under the FMLA.  See Reid-Falcone v. Luzerne County Comm. College, No.02-1818 2005 WL 1527792 at *9 (M.D. Pa. 2005).  As mentioned above, however, Smith has specifically offered this theory in addition or in the alternative to his claim for interference, and at the pleading stage "a plaintiff may state as many separate claims or defenses as it has, regardless of consistency."  Fed. R. Civ. P. 8(d)(3).

As such, at least at this early stage of the case, these allegations state a valid claim against the Defendants for retaliation for engaging in activities protected under the FMLA.  Additionally, the factual allegations in support of this claim sufficiently raise the right to relief above a speculative level to satisfy *Twombly*.  Accordingly, the Defendants' motion to dismiss will be denied.

**II.  MOTION TO STRIKE**

As mentioned, in addition to the motion to dismiss, the Defendants' have filed a motion to strike under Rule 12(f) of the Federal Rules of Civil Procedure.  This motion attacks paragraphs: 7, 16-29, 30, 33-34, 41-51, and 65 of the complaint.

Federal Rule of Civil Procedure 12(f) provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  The Defendants' challenge the above-mentioned paragraphs because they are immaterial, impertinent, or scandalous.  (Doc. No. 9 at 2.)  "An allegation is impertinent or immaterial when it is neither responsive nor relevant to the issues involved in the action."  2 Moore's Federal Practice, § 12.37[3] (Matthew Bender 3d ed.)  Scandalous allegations are those that "unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court."  Id.

A court is given broad discretion when reviewing a motion to strike pursuant to Rule 12(f), Krisa v. Equitable Life Assurance Soc'y, 109 F. Supp. 2d 316, 319 (M.D. Pa. 2000), but the remedy offered by the rule has been called "an extreme measure," Stanbury Law Firm v. I.R.S., 221 F.3d 1059, 1063 (8th Cir. 2000).  Accordingly, these motions are disfavored, "and will generally be denied unless the material bears no possible relation to the matter at issue and may result in prejudice to the moving party."  Miller v. Group Voyavgers, Inc., 912 F. Supp. 164, 168 (E.D. Pa. 1996) (citing North Penn Transfer, Inc. v. Victaulic Co. of Amer., 859 F. Supp. 154, 158 (E.D. Pa. 1994)).

Smith has asserted that Defendants violated the Pennsylvania Whistleblower Law in the second and third count of the complaint.  (Doc. No. 1 ¶¶ 153-165.)  Smith argues that "[t]he averments that Defendants challenge all relate to Plaintiff's knowledge of waste and wrongdoing

at PCM and why Smith spoke out against waste and wrongdoing." (Doc. No. 11 at 7.) He further argues that the Defendants have not shown any prejudice to warrant striking the allegations. (Id. at 5.) The Whistleblower Law provides in pertinent part:

> No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste.

43 Pa. Cons. Stat. § 1423(a). The word "waste" in the statute is defined as "[a]n employer's conduct or omissions which result in substantial abuse, misuse, destruction or loss of funds or resources belonging to or derived from Commonwealth or political subdivision sources." 43 Pa. Cons. Stat. § 1422. The word "wrongdoing" is defined as "[a] violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer." Id.

The Defendants argue that Smith's complaint "deviates far afield from [the] relevant points, so as to insult the Defendants, attempt to impugn their character, and further show a general disregard for the integrity of this Court." (Doc. No. 9 at 4.) To evaluate these claims, the Court will examine each challenged allegation or group of allegations as set out in the Defendants' brief.

**A. Familial Relationships: Paragraph 7**

Paragraph 7 of the Complaint sets forth the following allegations:

> Defendant Marcy Hoffman-Schlegel is an adult resident of the Commonwealth having an address of 3940 Locust Lane, Harrisburg

> Dauphin County, PA, 17109; Defendant Hoffman-Schlegel is the daughter of Defendant Carl Hoffman and step-daughter of Defendant Theresa Hoffman, and for all relevant times of this Complaint, Hoffman-Schlegel was PCM's Junior Vice President of Human Resources-Personnel.

(Doc. No. 1 ¶ 7.)  The Defendants attack this paragraph because "[t]he reference to Defendant Hoffman-Schlegel being the daughter of Defendant Carl Hoffman and step-daughter of Defendant Theresa Hoffman is completely immaterial and impertinent to the issues raised by Smith in his Complaint."  (Doc. No. 9 at 4.)  Whether or not the allegations of familial relationship end up being relevant to the case, the Defendants have not shown any prejudice from their inclusion in the complaint.  Accordingly, this paragraph will not be stricken.

### B.  Prior Investigations and Activities

A large number of the challenged allegations deal with the Plaintiff's summary of past investigations into PCM and Hoffman's activities.  There is no claim that Smith was terminated for reporting these past activities as a whistleblower.  The Defendants argue that these allegations are therefore immaterial to the Whistleblower claim because "Smith only alleges that in response to him complaining to Dr. Hoffman in May 2007 that PCM was not providing services at contractually required levels, PCM retaliated against him upon his return to work on January 28, 2008.  The alleged investigation of the Office of Inspector General in 1990 obviously has no relationship whatsoever to Smith's claims that the Defendants violated the Whistleblower Law in 2008."  (Doc. No. 9 at 5.)  Smith counters that "[t]he waste and wrongdoing immediately at issue in his whistleblower claims are a repeat of improprieties that Smith corrected in years past."  (Doc. No. 11 at 8.)

### 1.  Paragraphs 16-19 and 33

The allegations in these paragraphs deal with an investigation in 1990 conducted by the Pennsylvania Office of Inspector General ("OIG") into PCM's contractually provided services to the Department of Corrections. (Doc. No. 1. ¶¶ 16-19.) Smith alleges that because of this past questionable conduct, he was "vigilant to ensure that PCM not engage in a repeat of such behavior." (Doc. No. 33.)

The Court cannot agree that these events in 1990 bear no relation to the matter at issue. The Whistleblower Law under which Smith brings his second claim protects employees who report an employer's conduct that results in the misuse of funds or resources deriving from the government. The investigation in 1990 allegedly dealt with some of the same deficiencies in service that Smith was attempting to correct at PCM in 2007. (Doc. No. 1 ¶ 59.) In a letter written to Defendant Hoffman, Smith laid out PCM's service deficiencies in detail and referenced the 1990 investigation several times. (Doc. No. 1-2, Ex. 2, at 3.) Therefore, this past conduct relates to the Whistleblower claim because the statute requires that Smith show by a preponderance of evidence that he made "a good faith report." 43 Pa. Cons. Stat. § 1423(a). This is defined as "[a] report of conduct defined in this act as wrongdoing or waste which is made without malice or consideration of personal benefit and which the person making the report has reasonable cause to believe is true." 43 Pa. Cons. Stat. § 1422. As such, reference to the prior incidents of misconduct by PCM that resulted in an investigation is related to Smith having reasonable cause to believe his report was accurate. Given this connection and the fact that Smith explicitly referenced the 1990 investigation in his whistleblower letters to the Defendants, the allegations are not unrelated to his claims. Accordingly, paragraphs 16-19 and 33 will not be stricken.

### 2. Paragraphs 20-26

Paragraphs 20-26 detail an investigation into Hoffman by the Pennsylvania Department of Corrections ("DOC") and Pennsylvania State Board of Osteopathic Medicine ("SBOM"). (Doc. No. 1 ¶¶ 20-26.) The investigations allegedly led to cancellation of certain PCM contracts with the Department of Corrections. (Id. ¶ 23.) Further, the SBOM investigation allegedly led to a fine issued against Hoffman. (Id. ¶ 24-26.)

The Court cannot find that the allegations contained in paragraphs 20-26 are completely unrelated to the Whistleblower claim. The complaint details how the DOC's investigation into Hoffman's activities led to the cancellation of PCM contracts with the DOC. (Id. ¶ 22-23.) As with allegations contained in paragraphs 16-19 above, Smith alleges that he referenced these incidents in his reports to Hoffman about continued inadequacies in the company's service and relate to his good faith in making the reports that are at issue in the litigation. (Id. ¶ 53; 59-61.) As such, these allegations are not wholly unrelated to his claims under the Whistleblower Law.

Further, these allegations could provide important background and substantiation for Smith's claims that he was diligent in pointing out PCM's compliance issues. For example, Smith alleges that he was aware the investigation into the Defendants' prior misuse and waste of public funds threatened the corporation and his employment because of the resulting cancellation of public contracts. (Id. ¶¶ 33, 53.) As a result, throughout his time at PCM, Smith was more careful to report wasteful and damaging actions. (Id.) Other courts have held that allegations which supply background or historical material or which are of an evidentiary quality should not be stricken unless they are unduly prejudicial to the defendant. S.E.C. v. Toomey, 866 F. Supp. 719, 723 (S.D.N.Y., 1992). Particularly in light of the Supreme Court's holding in *Twombly*

requiring that a complaint's factual allegations raise a right to relief above a speculative level, see Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007), these background allegations bear directly on Plaintiff's complaint, are not unduly prejudicial, and are thus properly included in the complaint.

Finally, the Court does not find that any of these challenged allegations unnecessarily reflect negatively on the moral character of Defendant Hoffman. Accordingly, the Court will not strike paragraphs 20-26 from the complaint.

### 3  Paragraphs 27-29 and 34

The Defendants have included these paragraphs in their motion but have not offered any specific argument as to why they should be stricken. After review of the allegations in these paragraphs, in accordance with the reasoning set out above, the Court does not find that they are wholly unrelated to the claims or that they are scandalous. Accordingly, the paragraphs will not be stricken.

### 4. Paragraph 30

Paragraph 30 contains the following allegations:

> In or about 1994, Defendant Carl Hoffman terminated the employment of John M. Branyan, a Vice-President from the corporation's early days as PIHS; on information and belief, Hoffman disclosed to Smith that he also contemplated pursuing legal charges against Branyan for his alleged financial improprieties to the corporation, but elected not to pursue the same after Branyan threatened to expose the fact that Hoffman failed to disclose all his assets in the course of Hoffman's divorce from his first wife.

(Doc. No. 1 ¶ 30.) Plaintiff argues that "[t]he waste and wrongdoing immediately at issue in his whistleblower claims are a repeat of improprieties that Smith corrected in years past. . . . Thus, the allegations that Defendants challenge . . . go to PCM's past culture of indifference, if not

noncompliance." (Doc. No. 11 at 8.)  The Court cannot find, however, that this argument applies with as much force to the allegations of paragraph 30 because the past conduct alleged in this paragraph does not connect to the Plaintiff's present Whistleblower claims.  There is no indication that the conduct described in this paragraph involved "waste" or "wrongdoing" such as Smith is presently reporting or that it had any negative consequences for PCM.  There is also no indication that this conduct had any bearing on Smith's diligence in his good faith reporting of waste or wrongdoing at PCM.  For example, Smith refers to his awareness and vigilance to not repeat the practices that brought on the OIG investigation and the State Board Adjudication, (Doc. No. 1 ¶¶ 33; 53), but does not mention the Branyan firing again.  As such, the conduct in paragraph 30 does not go to PCM's past issues of compliance with their public contracts and cannot be justified as historical or background material related to his good faith in making the whistleblower reports at issue.  Additionally, these allegations refer to personal matters involving Defendant Hoffman that reflect negatively on his moral character.  Because the allegations are, at best, only tenuously related to the claims at issue, the Court finds that they unnecessarily reflect on Hoffman's moral character.  Accordingly, paragraph 30 will be stricken.

### B.  Management Qualifications: paragraphs 41–51

These paragraphs contain allegations that Defendant Hoffman hired several unqualified "cronies" to positions of responsibility within PCM while limiting Smith's responsibilities. (Doc. No. 1 ¶ 41-51.)  The Defendants argue that "[t]he qualifications of these individuals have no essential or important relationship to Smith's claim for relief.  They are not necessary to the issues in question."

Here, the Court cannot find that these allegations bear no relationship to the claims at issue. The named employees hold important positions at PCM, including: assistant legal counsel (Id. ¶ 42), executive vice president (Id. ¶ 43), regional manager for Eastern and Central Pennsylvania who became vice president for clinical operations (Id. ¶ 44), and assistant corporate medical director (Id. ¶ 45). From the allegations, it is clear that these individuals were important employees in the company's operations and management, so their position and status in PCM could be related to the company's compliance problems that Smith reported. As discussed above, Smith must show he had a reasonable cause to believe his reports were true. He explains in the complaint that "[a]s the aforementioned persons assumed greater responsibility for PCM's operations, Smith observed lapses in PCM practices that caused Smith, in good faith, to alert Defendant Carl Hoffman that these lapses placed PCM at risk of committing waste and/or wrongdoing in its contracts with public bodies." (Id. ¶ 52.) The qualifications of these individuals is therefore related to his good faith belief that the company was not fulfilling its obligations. Further, the Defendants offer no persuasive argument on how these allegations are prejudicial.

Smith also argues that the Plaintiff's one use of the term "cronies" in reference to these individuals is scandalous and "is repulsive and detracts on the dignity of the Court." (Doc. No. 9 at 9.) While this term may carry a negative connotation, the Court cannot find that use of this description negatively reflects on the named individuals' moral character to sufficiently justify the drastic sanction of striking the paragraph from the pleading. Accordingly, paragraphs 41-51 will not be stricken.

**C. Reports of wrongdoing: paragraph 65**

Paragraph 65 includes the following allegations:

> In and before December 2007, Smith had advised PCM's general counsel Lock about issues with legal consequences, such as when Smith became aware that Defendant Carl Hoffman and other present or former PCM employees were eavesdropping, via the internal telephone system, on staff conversations without the staff's knowledge; in such instances Lock intervened to stop said actions.

(Doc. No. 1 ¶ 65.) The Defendants argue that this allegation is impertinent and immaterial to Smith's claims because "he complained of waste and wrongdoing regarding the Defendants' adherence to the contacts with various counties. There is no allegation that the Defendants retaliated against Smith because he discussed various 'issues with legal consequences' with Joshua Lock . . . ." (Doc. No. 9 at 10.) This is not an accurate assessment, however. For one, paragraph 65 is contained in a section of the complaint titled "Smith Gives Defendants Notice of Whistleblowing Prior To January 28, 2008." (Doc. No. 1. at 14)  Secondly, the Plaintiff has asserted in his complaint that "[n]amed Defendants' actions against Smith violated Section 3 of the Whistleblower Law. . . ." (Id. ¶ 156.) As set out above, Section 3 of the Whistleblower law prohibits employers from retaliating against an employee because he has reported waste or wrongdoing, with wrongdoing being defined as a violation of a statute, regulation or code of conduct. Smith has alleged that each of the Defendants is an employer within the meaning of the Whistleblower law. (Id. ¶ 155.) Therefore, the report Smith made to Lock described in this paragraph could be among the reasons that PCM retaliated against him in violation of the Whistleblower Law.[4] Further, these allegations could be related to his good faith belief that waste and wrongdoing was occurring within the corporation, which is pertinent to his claim as

---

[4] Of course, the question of whether the alleged conduct in paragraph 65 would be adequate to state a valid claim for relief under the Whistleblower Law is not before the Court on a Rule 12(f) motion.

discussed above. Because the allegations in this paragraph could be related to the claim for relief, paragraph 65 will not be struck.

## III.  CONCLUSION

For the foregoing reasons, the Defendants' motion to dismiss (Doc. No. 5) will be denied and the Defendants' motion to strike (Doc. No. 6) will be granted in part and denied in part. An order consistent with this memorandum will follow.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **RICHARD C. SMITH,** : | |
| : | |
| **Plaintiff** : | Civil Action No. 1:08-CV-1397 |
| : | |
| v. : | (Chief Judge Kane) |
| : | |
| **PRIMECARE MEDICAL, INC. et al** : | |
| : | |
| **Defendants** | |

# ORDER

**AND NOW**, on this 24th day of November 2008, upon consideration of the Defendants' Motions to Dismiss Pursuant to Rule 12(b)(6) (Doc. No. 5) and Motion to Strike Pursuant to Rule 12(f) (Doc. No. 6) filed in the above-captioned matter, and for the reasons set forth in this Court's Memorandum Opinion filed herewith, **IT IS HEREBY ORDERED THAT:**

1. The Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) (Doc. No. 5) is **DENIED**

2. The Defendants' Motion to Strike Pursuant to Rule 12(f) (Doc. No. 6) is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a. Paragraph 30 of the complaint is **STRICKEN**.

    b. As to paragraphs 7, 16-29, 33-34, 41-51, and 65, the motion is **DENIED**.

                                             s/ Yvette Kane
                                             Yvette Kane, Chief Judge
                                             United States District Court
                                             Middle District of Pennsylvania