IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD C. SMITH, | : | No. 1:08-cv-1397 |
| Plaintiff | : | Civil Action – Law |
| | : | |
| vs. | : | |
| | : | |
| PRIMECARE MEDICAL, INC., | : | Chief Judge Kane |
| CARL A. HOFFMAN, JR., D.O., | : | |
| THERESA M. HOFFMAN, | : | |
| JOSHUA D. LOCK, | : | Jury Trial Demanded |
| MARCY HOFFMAN-SCHLEGEL, | : | |
| FRANK KOMYKOSKI, and | : | |
| KNIGHTS OF VON DUKE, LTD., | : | |
| Defendants | : | |

## DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT

AND NOW, come PrimeCare Medical, Inc., Carl A. Hoffman, Jr., D.O.,

Theresa M. Hoffman, Joshua D. Lock, Marcy Hoffman-Schlegel, Frank

Komykoski, and Knights of Von Duke, Ltd., Defendants above-named, by their

attorneys, Goldberg Katzman, P.C., and submit this Answer to the Complaint

heretofore herein filed:

1. The averments contained in Paragraph 1 of Plaintiff's Complaint are admitted.

2. The averments contained in Paragraph 2 of Plaintiff's Complaint are admitted.

3.     The averments contained in Paragraph 3 of Plaintiff's Complaint are admitted.

4.     The averments contained in Paragraph 4 of Plaintiff's Complaint are admitted.

5.     The averments contained in Paragraph 5 of Plaintiff's Complaint are admitted.

6.     The averments contained in Paragraph 6 of Plaintiff's Complaint are admitted.

7.     The averments contained in Paragraph 7 of Plaintiff's Complaint are admitted.

8.     The averments contained in Paragraph 8 of Plaintiff's Complaint are admitted.

9.     It is admitted that Plaintiff has brought his action under the "Family and Medical Leave Act", the "Pennsylvania Whistleblower Law", the "Pennsylvania Wage Payment and Collection Law", and other common law claims.  It is denied that Plaintiff's claims are cognizable under any of the asserted legal authority and proof thereof is demanded.

10.    It is admitted that Plaintiff was employed by Defendant PrimeCare Medical, Inc. from 1990 to March 14, 2008 when he provided Carl A. Hoffman, Jr. with a handwritten note which indicated that he considered himself to have been

constructively discharged. It is further admitted that on March 14, 2008, Plaintiff was a Vice President of Operations for PCM. By way of further answer, it is denied that Plaintiff was constructively discharged from his employment with PCM, and, on the contrary, it is averred that he voluntarily left his position on March 14, 2008.

11. The averments contained in Paragraph 11 of Plaintiff's Complaint are admitted.

12. The averments contained in Paragraph 12 of Plaintiff's Complaint are admitted.

13. It is admitted that on June 29, 1998, Pennsylvania Institutional Health Services, Inc. amended its Articles of Incorporation to change its name to PrimeCare Medical, Inc.

14. The averments contained in Paragraph 14 of Plaintiff's Complaint are admitted.

15. It is admitted that PCM is engaged in providing contracted health care services to county prisons and juvenile detention facilities at 52 facilities in four states.

16. It is denied that PCM and Defendant Carl A. Hoffman, Jr. experienced "disruptive events" since 1990 and proof thereof is demanded.

17.    The averments contained in Paragraph 17 of Plaintiff's Complaint are admitted.

18.    It is admitted that in 1989 a riot occurred at the State Correctional Institution at Camp Hill. After reasonable investigation, Defendants are without knowledge or information sufficient to form a belief as to the accuracy of the remaining averments contained in paragraph 18 of Plaintiff's Complaint.

19.    It is admitted that in 1991 the Pennsylvania Office of Inspector General conducted an investigation into billing procedures for healthcare services at SCI-C which disclosed an overpayment to PIHS of approximately $27,000. No evidence of willful misconduct was discovered, and at the completion of this investigation, PCM refunded the overpayment.

20.    The averments contained in Paragraph 20 of Plaintiff's Complaint are admitted.

21.    Denied as stated. By way of further answer, as the Medical Director at SCI-C, Carl A. Hoffman, Jr. had an obligation to assure the accuracy of the inmate's medical records. To do so, Dr. Hoffman made a late entry in the inmate's chart to show an additional, uncharted physician contact with the inmate. The accusation that medical records had been altered was referred to the Cumberland County District Attorney who, after investigation noted that, "this admitted alteration was

-4-

purportedly to correct an error, and we will not dispute this explanation because we find no exculpatory benefit from the change."

22. The averments contained in Paragraph 22 of Plaintiff's Complaint are admitted. By way of further answer, the opinion of the DOC notwithstanding, and as confirmed by a subsequent determination of the Osteopathic Board following a hearing of approximately seventeen (17) days, there were no deficiencies in the adequacy of care provided to the deceased inmate, a fact known to Plaintiff who, at the time was employed by PIHS, and assisted in the preparations for the aforesaid hearing.

23. Admitted in part and denied in part. It is admitted that in 1992 the DOC cancelled its contracts with PIHS. The termination was made pursuant to the "without cause" provision of the health-services contract between the DOC and PIHS and not "for cause". The termination notice made no reference to the events of Paragraphs 19-22 of the Complaint.

24. The averments contained in Paragraph 24 of the Plaintiff's Complaint are admitted.

25.a. – f. The averments contained in Paragraphs 25.a. – f. refer to the State Board's adjudication which as a writing speaks for itself. By way of further answer, the conclusion of the Board regarding the late chart entry was contradicted by the written opinion of the then District Attorney of Cumberland County, Pennsylvania,

and now current Justice of the Pennsylvania Supreme Court, J. Michael Eakin.  See paragraph 21, *supra*.  To the extent the references to the adjudication are intended to infer a history of deficient or improper operations they are denied.

26.    The averments contained in Paragraph 26 of Plaintiff's Complaint are admitted.  By way of further answer, Paragraph 25 of this Answer is incorporated herein by reference.

27.    It is admitted that in 1992 the DOC suspended PIHS from bidding on DOC contracts.  In 1993 the DOC proposed to debar PIHS from government contracting.  The DOC's proposed debarment of PIHS was enjoined by order of the Commonwealth Court of Pennsylvania, and, eventually, the DOC abandoned its effort to debar the Company.

28.    Paragraph 13 of this Answer is incorporated herein by reference.

29.    It is admitted that PIHS and DOC resolved their disputes by execution of a settlement agreement which proscribed bidding on state contracts.  It is denied that this limitation was for a fixed period; it was, rather, coterminous with the tenure of a named state officer.  Furthermore, pursuant to the settlement agreement, PIHS received millions of dollars to settle its claims against the DOC.

30.    No answer required.  The Hon. Yvette Kane struck this paragraph from the Complaint in her decision and Order of November 24, 2008.

31.    The averments contained in Paragraph 31 of Plaintiff's Complaint are admitted.

32.    The averments contained in Paragraph 32 of Plaintiff's Complaint are admitted.

33.    Denied and proof thereof is demanded.  By way of further answer, the inference that Defendants had engaged in misleading, deceptive, untrue, or fraudulent behavior is specifically denied.

34.    Denied and proof thereof is demanded

35.    It is admitted that, as Vice President of Operations, Plaintiff was involved in the cooperative effort of overseeing the day-to-day operations of PCM.  As a consequence of the deterioration in the quality of Plaintiff's work, however, Plaintiff's responsibility for day-to-day operations of the Company were concomitantly reduced.

36.    Denied and proof thereof is demanded.

37.    The averments contained in Paragraph 37 of Plaintiff's Complaint are admitted.

38.    The averments contained in Paragraph 38 of Plaintiff's Complaint are admitted.

39.    Denied.  By way of further answer, it is averred that each of PCM's two (2) Vice Presidents were offered an opportunity to purchase a 5% interest in the

insurance company. The money with which Plaintiff purchased his stock in the insurance company was loaned to him by Carl A. Hoffman, Jr. Plaintiff executed a promissory note evidencing this loan. This note provided that the loan be repaid within two (2) years with quarterly payments due on the tenth (10th) day of each month. The note further provided that upon default in the repayment of the loan that the note holder was authorized to return the stock to satisfy the loan. Plaintiff defaulted in the repayment of this loan, and Dr. Hoffman exercised his right to effect the return of Plaintiff's shares. By letter dated January 11, 2002 Plaintiff was notified of this action.

40.    It is denied that Carl A. Hoffman, Jr. "grant[ed]" an equity interest in the offshore insurance company to Plaintiff. Rather, this interest was sold to him under the conditions referred to in Paragraph 39, *supra.* It is admitted that Plaintiff was given minutes of the meeting at which this action occurred. By way of further answer, the averments contained in Paragraph 39 of this Answer are incorporated herein by reference.

41.    Denied and proof thereof is demanded.

42.a.-c.    The averments contained in Paragraphs 42.a. – c. of Plaintiff's Complaint are admitted.

d.    Denied and proof thereof is demanded.

e.   It is denied that Mr. Kerr was dismissed as the result of his selection of law firms to represent PCM; these were decisions which he did not make. By way of further answer, Mr. Kerr was terminated as a result of both performance based issues as well as issues involving disloyalty to various corporate officials. This included, but was not limited to, selection of outside law firms. Plaintiff was aware of and fully supported Mr. Kerr's dismissal.

43.   Denied as stated. Mrs. Hoffman, who had served as a member of the Board of Directors of PCM for approximately nine years, was hired to supervise the management of the staff of PCM's corporate headquarters and to provide other administrative functions. Her familiarity with company practices and personnel, her prior job experiences, and her inter-personal skills made her uniquely suited for this position – as evidenced by the exemplary manner in which she has discharged her duties.

44.   The averments contained in Paragraph 44 of Plaintiff's Complaint are admitted. By way of further answer, it is averred that Mr. Haskins, by demonstrated competence, commitment, and loyalty, earned his promotions.

45.   The averments contained in Paragraph 45 of Plaintiff's Complaint are admitted.

46.   Denied as stated. PCM operations have always been a cooperative effort. Included among those involved in this process were the Company President,

Medical Director, Assistant Medical Director, Vice Presidents, Junior Vice Presidents, Directors and the Health Service Administrators at each facility at which PCM provided health care services. Plaintiff's involvement was not unique or as substantial as averred in paragraph 46 of his Complaint. Furthermore, Plaintiff was not qualified by education, training or experience or legally able to conduct PCM clinical operations.

47.    Denied as stated. Paragraph 46 of this Answer is incorporated herein by reference. By way of further answer, Carl A. Hoffman, Jr., as sole PCM shareholder, Chairman of the PCM Board of Directors, Company President, and Medical Director, always had the "final word in operational matters." As Dr. Hoffman became aware of deficiencies in the quality of Plaintiff's work, Mr. Smith's job functions were reduced and transferred to others.

48.    The averments in Paragraph 48 of Plaintiff's Complaint are admitted. By way of further answer, it is averred that Mr. Komykoski held command positions in the United States Navy which included service at sea and in the Pentagon. His experience in the Navy included procurement, systems analysis, management, and personnel matters. This experience was viewed as enormously significant when Mr. Komykoski was hired by PCM and this perception has been confirmed by his work with the Company. Additionally, since being hired by PCM, Mr. Komykoski has earned a Masters Degree in Business Administration.

49.     Admitted in part and denied in part.  It is admitted that Plaintiff was directed to assist in training Mr. Komykoski.   It is denied that Dr. Hoffman directed Plaintiff to "give greater decision making authority to younger staff and back out of operations."

50.     It is denied that Carl A. Hoffman, Jr. stated to Plaintiff that Mr. Komykoski would assume responsibility for the day-to-day operations of PCM.  It is admitted that Mr. Komykoski was promoted when he received his M.B.A.  By way of further answer Paragraphs 47 and 49 of this Answer are incorporated herein by reference.

51.     The averments contained in Paragraph 51 of Plaintiff's Complaint are admitted.

52.     Denied and proof thereof is demanded.  By way of further answer, Plaintiff's first attempt to "alert" Defendants came while Plaintiff was attempting to extort a severance package.

53.     Denied.  Indeed, Plaintiff made no reports of alleged wrongdoing to anyone until after his efforts to negotiate a severance agreement acceptable to him had failed.  The only reason Plaintiff made the accusations of wrongdoing when he did was to attempt to strong-arm PCM into acceding to his unreasonable demands for a settlement agreement.  Prior to Plaintiff's 2008 accusations, he commented on PCM's integrity to innumerable people.

54.   Denied and proof thereof is demanded.

55.   Denied and proof thereof is demanded.

56.   Denied and proof thereof is demanded.

    a.   Denied and proof thereof is demanded.

    b.   Denied and proof thereof is demanded.

    c.   Denied and proof thereof is demanded.

    d.   Denied and proof thereof is demanded.

    e.   Denied and proof thereof is demanded.   "Gross" is a meaningless description.  By way of further answer, Plaintiff's averments in paragraph 56 a.-e. of his Complaint establish a basic inability to grasp Defendant's financial statements, the deficiency of which contributed to his failing job performance.

57.   Denied and proof thereof is demanded.

58.   Denied and proof thereof is demanded.

59.   It is admitted that on or before May 2007 Plaintiff learned that Carl A. Hoffman, Jr. was including physician-on-call time as part of the hours that PCM physicians were providing to public bodies in West Virginia with which PCM contracted.   It is denied that Mr. Smith reminded Dr. Hoffman that a similar practice caused problems in 1990 -- it did not.  It is further denied that Mr. Smith urged that this practice would be rejected in West Virginia and was ignored by Dr. Hoffman.  By way of further answer, the West Virginia Department of Juvenile

Services by custom and practice credits fifty percent (50%) of physicians' on-call hours to the contracted for hours at their facilities.

60.    Denied and proof thereof is demanded.

   a.    Denied and proof thereof is demanded.

   b.    Denied and proof thereof is demanded

   c.    Denied and proof thereof is demanded

   d.    Denied and proof thereof is demanded

61.    Denied and proof thereof is demanded

   a.    Admitted in part and denied in part.  While it is admitted that Mr. Haskins is called before an inmate is referred from a facility at which PCM provides health care services to a hospital or outside medical facility, the referrals are reviewed by the PCM Medical Director, or Assistant Medical Director, or the facility Medical Director.

   b.    It is admitted that requests for use of non-formulary medications are reviewed by Mr. Haskins.  After gathering information on a specific request, Mr. Haskins can approve use of non-formulary medications; he cannot deny the use of such medications.  Ultimate decisions and autonomy with respect to this practice is retained by PCM physicians and mid-level providers.

62.    Denied and proof thereof is demanded.

63.    Denied and proof thereof is demanded.

a.      Denied and proof thereof is demanded.  By way of further answer, this language was developed by Plaintiff no later than 1999.

b.      Denied and proof thereof is demanded.  By way of further answer it is averred that since approximately April 1, 1999 virtually all PCM contracts contained language allowing it to recoup costs above a specified threshold associated with the treatment of infectious diseases.  This language was included in approximately twenty (20) of PCM's Pennsylvania contracts.

c.      Denied and proof thereof is demanded.  By way of further answer, it is averred that the use of the ID CAP was designed to ensure community standards of care at all PCM facilities by sharing the costs of treatment for serious infectious diseases between PCM and its clients, i.e., all efforts would be made by PCM to treat patients within the facility or at local health care facilities at its expense, but, in the event that the cost exceeded a catastrophic threshold, the County would assume responsibility.

d.      Denied and proof thereof is demanded.

e.      Denied as stated.  It is admitted that a question was raised by a Deputy Warden at the Berks County Prison regarding application of the ID CAP.  After this issue was raised, PCM and Berks County agreed that the infectious disease cap would be specifically limited to HIV, Hepatitis C, and Tuberculosis on those rare occasions when the costs associated with treatment were inordinately high.

i.   It is denied that Plaintiff advised Mr. Haskins and Dr. Hoffman that the interpretation of the Berks County Deputy Warden was correct. By way of further answer it is averred that Mr. Haskins was not working at PCM corporate headquarters at the time this issue arose. Nonetheless, Mr. Haskins was asked by Plaintiff to review all infectious disease billings at Berks County and to identify and assure deletion of all ID billings with smaller charges as Plaintiff had promised.

ii.   It is admitted that Mr. Haskins and Dr. Hoffman thereafter revised PCM's practice of billing ID expenses to Berks County and did so consistent with the interpretation of Plaintiff and the Deputy Warden, but only in the manner averred in paragraph 63.e.i. of this Answer. By way of further answer, it is averred that the revised billing practice of Berks County Prison has never changed and includes charges to the County only for HIV, Hepatitis C, and Tuberculosis requiring high cost infectious disease treatments.

iii.   Denied.

iv.   Paragraph 63.e.iv. of Plaintiff's Complaint is admitted.

v.   Paragraphs 63.e.ii. and iii. of this Answer are incorporated herein by reference. By way of further answer, the Berks County Prison is provided a copy of all vendor bills and hospital charges each quarter together with an explanation provided in a spreadsheet format for the purpose for each charge.

f. Denied and proof thereof is demanded. By way of further answer, the ID billing in all other counties is done in conformity with the ID CAP language contained in their contract with PCM.

64. It is denied that on or before May 2007, Plaintiff advised Carl A. Hoffman, Jr. that PCM was illegally requiring inmates to sign release of financial responsibility forms to avoid payment for services rendered to treat pre-existing conditions. It is further denied that the PCM contract with Broome County, New York was terminated for this or for any other reason. The contract expired, and for various reasons -- particularly geographical isolation -- there was no interest in renewal of that contract.

65. Denied and proof thereof is demanded .

66. It is denied that in and before December, 2007, Plaintiff advised Joshua D. Lock as to matters described in Paragraphs 55, 56, and 59 through 64 of Plaintiff's Complaint, but that Lock indicated that he could not intervene in these matters. By way of further answer, it is averred that no illegal or improper conduct having occurred, intervention was unnecessary.

67. The averments contained in Paragraph 67 of Plaintiff's Complaint are admitted.

68. Admitted in part and denied in part. It is admitted that in advance of Plaintiff's surgery he advised PCM that he would be undergoing the medical

procedure described in Paragraph 67 of Plaintiff's Complaint. It is denied that Plaintiff indicated that he anticipated a return in approximately three weeks. It is, rather, averred that Plaintiff stated he would return in two weeks

69.    Denied and proof thereof is demanded. By way of further answer, Plaintiff was informed of his various rights under the FMLA by *inter alia* his receipt of PCM's policy manual.

70.    The Defendants are without sufficient information to form an answer as to the truth of the matter alleged and proof thereof is demanded.

71.    The Defendants are without sufficient information to form an answer as to the truth of the matter alleged and proof thereof is demanded.

72.    Admitted in part and denied in part. It is admitted that during Plaintiff's convalescence, Carl A. Hoffman, Jr. visited him. It is also admitted that at least during one such visit, pursuant to an agreement which he had reached with Mr. Smith before his leave, Dr. Hoffman reiterated to Mr. Smith that he could continue on leave and continue to receive his full salary during that time period. This declaration of intention to permit Plaintiff continued leave with the payment of full salary and benefits was made to and agreed upon by Plaintiff despite the fact that Plaintiff had no leave available prior to his surgery. It is further admitted that Dr. Hoffman indicated that he wanted Plaintiff to stay off work until he was fully recovered from both his surgery and the complications which arose from his

surgery.   It is denied that Plaintiff was ever told that he would not have to use leave since Plaintiff had no leave available to him.   Finally, it is denied that Dr. Hoffman ever indicated that Plaintiff would "always have your job as I have always promised you."

73.   Admitted.   By way of further answer, Plaintiff agreed not to take FMLA leave and his leave of absence was never designated as FMLA leave.

74.   Admitted in part and denied in part.   It is admitted that Plaintiff and Carl A. Hoffman, Jr. spoke on a regular basis during the initial period of Mr. Smith's rehabilitation.   It is denied that they spoke with the frequency alleged in Paragraph 74 of Plaintiff's Complaint.

75.   Denied and proof thereof is demanded.

76.   Admitted in part and denied in part.   It is admitted that Plaintiff advised Carl A. Hoffman, Jr. that he wished to return to work as early as July, 2007, and that he believed that he could perform his job duties.   It is denied that Plaintiff used the term "essential functions of his previous position", a mantra derived from the "Family and Medical Leave Act" which he did not adopt until he began to make explicit threats to Dr. Hoffman in aide of his efforts to negotiate a severance agreement.   Dr. Hoffman requested that Plaintiff provide him with a note from a physician indicating that he was able to return to work.   It is further denied that

Plaintiff requested that Carl A. Hoffman, Jr. or Joshua D. Lock contact his physician to confirm Plaintiff's health status.

77.   Denied and proof thereof is demanded.

78.   Admitted in part and denied in part.   It is admitted that there were conversations with Plaintiff and Carl A. Hoffman, Jr. regarding PCM's disability insurance programs.  Indeed, Plaintiff was advised of both the availability and the limitations of those programs in advance of his leave.  In lieu of disability leave with its significantly reduced remuneration for Plaintiff, Plaintiff and Carl A. Hoffman, Jr. agreed that PCM would continue to pay Smith his entire salary with full benefits despite the fact Plaintiff did not have any accumulated leave.  It is denied that Dr. Hoffman insisted that Plaintiff forbear from making a claim for disability insurance.  Mr. Smith was free to make a claim for disability payments at any time had he chosen to do so since that was a benefit available to him.  It is admitted that in or about August, 2007 Plaintiff spoke to Carl A. Hoffman, Jr. at a wedding reception and asked to return to work.  Dr. Hoffman asked the Plaintiff to provide a note from a physician about his work status.

79.   Admitted in part and denied in part.  It is admitted that in or about October, 2007, Plaintiff and his wife spoke to Dr. and Mrs. Hoffman at a wedding reception and stated that Plaintiff was able and willing to return to work.  Dr. Hoffman's position remained unchanged; he wanted Plaintiff to be able to physically be able

to perform his job and Plaintiff needed to provide a note from the physician about his work status.

80.    Denied and proof thereof is demanded.

81.    The averments contained in Paragraph 81 of Plaintiff's Complaint are admitted.  By way of further answer, paragraph 79 of this Answer is incorporated herein by reference.

82.    Admitted in part and denied in part.  It is admitted that on December 7, 2007, Plaintiff met with Carl A. Hoffman, Jr. at PCM's office to discuss Plaintiff's return to work.  It is denied that the purpose of Plaintiff's visit was to prepare for a deposition.  Rather, that meeting was scheduled to discuss Plaintiff's employment status with PCM.  It is further admitted that at that meeting Dr. Hoffman proposed to Plaintiff that he assume a role as a consultant to PCM working from his home. The financial terms averred in Paragraph 82 of Plaintiff's Complaint are denied and proof thereof is demanded.

83.    Denied and proof thereof is demanded.

84.    Admitted in part and denied in part.  It is admitted that on December 10, 2007, Plaintiff delivered a letter to Dr. Hoffman purporting to contain the substance of their discussions.   It is denied that this letter memorialized the December 7, 2007 discussion between the parties and proof thereof is demanded.

85.     Admitted in part and denied in part.  It is admitted that on December 10, 2007 Plaintiff met with Carl A. Hoffman, Jr. at which time Plaintiff handed Dr. Hoffman a memo purporting to memorialize their discussion of December 7, 2007. It is denied that Dr. Hoffman accused Plaintiff of not trusting him.  By way of further answer, it is averred that Dr. Hoffman suggested that the letter with which he had been presented contained inaccurate representations of what had been discussed the preceding Friday.  Thereafter, Dr. Hoffman suggested that discussion of Plaintiff's December 10, 2007 proposal be conducted at a future time.

86.     Denied as stated.  It is denied that on or about December 19, 2007, Carl A. Hoffman, Jr. dispatched Joshua D. Lock to meet with Plaintiff at a restaurant in New Cumberland, Pennsylvania, and, on the contrary, it is averred that, at the direction of Dr. Hoffman and in an attempt to effect an amicable resolution of the dispute regarding the misrepresentations contained in Plaintiff's December 10, 2007 letter, Mr. Lock had an agreement prescribing the conditions of Mr. Smith's separation from PCM prepared for Mr. Smith's review.  This document was presented to Mr. Smith on or about December 19, 2007 at a meeting which occurred at a time and place of Mr. Smith's choosing.  With respect to the further averments contained in Paragraph 86 of Plaintiff's Complaint:

86 a.-f.  The averments in these subparagraphs refer to a writing which speaks for itself.

87.    Admitted. By way of further answer, it is denied that Plaintiff had any rights under the legislation referred to in Paragraph 87 of his Complaint.

88.    Admitted.

89.    Admitted in part and denied in part. It is admitted that on or before January 24, 2008 Mr. Smith provided PCM with a letter from his physician indicating that Smith was cleared to return to work as of September 20, 2007. The Defendants are without sufficient information to form the basis of an answer to the remaining allegations and proof thereof is demanded.

    a.    The Defendants are without sufficient information to form the basis of an answer to the allegation and proof thereof is demanded.

    b.    Denied and proof thereof is demanded.

90.    The averments contained in Paragraph 90 of Plaintiff's Complaint are admitted.

91.    Admitted in part and denied in part. It is admitted that on January 28, 2008 Smith returned to work at PCM and that upon his return was met by PCM Executive Vice President Theresa M. Hoffman and Joshua D. Lock.

    By way of further answer it is averred that:

    a.    Admitted. By way of further answer, Smith was advised that his former, massive office was now being occupied by two employees integrally involved in overseeing the operations of PCM.

b.     It is denied that Plaintiff was prohibited from use of a handicapped parking space. By way of further answer, it is averred that, upon Plaintiff's return to PCM, Mr. Lock inquired of Plaintiff as to whether or not he had further need for use of a handicapped parking space and, when Plaintiff indicated that he did not, he was asked to move his vehicle from the handicapped parking space which it was then occupying. Later Plaintiff requested from Carl A. Hoffman, Jr. continued access to a handicapped space. That request was granted.

c.     Admitted in part and denied in part. It is admitted that Smith was instructed to limit phone calls made to parties outside of PCM's corporate headquarters. The remaining allegations are denied and proof thereof is demanded.

d.     Admitted in part and denied in part. It is admitted that Plaintiff was denied access to PCM's computer network headquarters.    The remaining allegations are denied and proof thereof is demanded.

e.     Admitted.

f.     Admitted.

g.     Admitted.

h.     Admitted.

i.     Denied and proof thereof is demanded.

j.     Admitted.

k.     Denied and proof thereof is demanded.

l.    Admitted in part and denied in part. It is admitted that Smith was advised on December 19, 2007 when he met with Lock, that his mischaracterization of the December 7, 2007 conversation which he had with Dr. Hoffman had exacerbated a deterioration of the relationship which existed between the two men, which had begun as a result of Plaintiff's increasingly poor job performance. The remaining allegations are denied and proof thereof is demanded.

m.    Admitted in part and denied in part. It is denied that Mr. Lock informed Plaintiff that PCM was " 'a hostile work environment' due to Plaintiff's whistleblower claims . . . ." Plaintiff was never told his claims threatened the existence of the Company. He was, however, advised that his disparagement of the Company, however false, had the potential to cause harm which could inure to the detriment of its employees, many of whom he had known for many years.

92.    Plaintiff's Complaint contains no numbered paragraph 92.

93.    Admitted in part and denied in part. It is admitted that Plaintiff presented the letter. It is specifically denied that the allegations contained therein are accurate.

94.    Admitted in part and denied in part. It is admitted that Plaintiff presented the letter. It is specifically denied that the allegations contained therein are accurate.

95.     The averments contained in Paragraph 95 of Plaintiff's Complaint refer to Plaintiff's letter of March 13, 2008 which, as a writing speaks for itself.  By way of further answer, any and all allegations of "waste and wrongdoing" contained in the letter are denied and proof thereof is demanded.

96.     It is admitted that PCM has received and accepted revenue from Berks County as if PCM fully performed its contract with the County.  By way of further answer, it is averred that PCM was entitled to such compensation since, in fact, it had fully performed its services under the contract with Berks County.

97.     The averments contained in Paragraph 97 of Plaintiff's Complaint refer to Plaintiff's letter of March 13, 2008 which, as a writing speaks for itself.  By way of further answer, any and all allegations of "waste and wrongdoing" contained in the letter are denied and proof thereof is demanded.

98.     It is admitted that PCM has received and accepted revenue from Dauphin County as if it had fully performed its contracts with the Dauphin County Prison. By way of further answer, it is averred that PCM was entitled to such compensation since, in fact, it had fully performed its services under the contract with Dauphin County.

99.     The averments contained in Paragraph 99 of Plaintiff's Complaint refer to Plaintiff's letter of March 13, 2008 which, as a writing speaks for itself.  By way of

further answer, any and all allegations of "waste and wrongdoing" contained in the letter are denied and proof thereof is demanded.

100.   It is admitted that PCM has received and accepted revenue from Lancaster County as if it fully performed its contract with the Lancaster County Prison. By way of further answer, it is averred that PCM was entitled to such compensation since, in fact, it had fully performed its services under the contract with Dauphin County.

101.   The averments contained in Paragraph 101 of Plaintiff's Complaint refer to Plaintiff's letter of March 13, 2008 which, as a writing speaks for itself. By way of further answer, any and all allegations of "waste and wrongdoing" contained in the letter are denied and proof thereof is demanded.

102.   It is admitted that PCM has received and accepted revenue from West Virginia DJS and West Virginia RJA as if PCM fully performed its contract. Except as otherwise indicated herein, PCM has fully performed its contract with these agencies and was entitled to such compensation.

103.   The averments contained in Paragraph 103 of Plaintiff's Complaint refer to Plaintiff's letter of March 13, 2008 which, as a writing speaks for itself.  By way of further answer, any and all allegations of "waste and wrongdoing" contained in the letter are denied and proof thereof is demanded.

104. It is admitted that PCM has received and accepted revenue from York County as if PCM fully performed its contract with the York County Prison. By way of further answer it is averred that PCM was entitled to such compensation since it had performed its services to the inmates of the York County prison as fully contemplated by its contract with the County.

105. Denied and proof thereof is demanded.

106. Denied. After reasonable investigation Defendants are without knowledge or information sufficient to form a belief as to the truth of Plaintiff's averments regarding his awareness of the status of his leave balance as of January 28, 2008.

107. Denied and proof thereof is demanded.

108. Admitted.

109. It is admitted that on or about February 6, 2008, Smith provided Carl A. Hoffman, Jr. a memo indicating that, because he possessed a handicap placard, he was entitled to park in a handicapped space. By way of further answer, it is averred that, despite Smith's assertions on January 28, 2008 that he no longer had need for handicapped parking, Dr. Hoffman indicated to Smith that he was free to use a handicapped parking space at PCM offices. Smith resumed use of this parking space until he left PCM on March 14, 2008.

110. It is admitted that on or about February 11, 2008, Marcy Hoffman-Schlegel, PCM Junior Vice President of Human Resources, asked Mr. Smith to advise her of

any accommodations which he needed to perform his job. It is admitted that on or about February 15, 2008, Mr. Lock sent an email to Plaintiff in response to a complaint made by Mr. Smith to Mr. Lock on February 7, 2008 that he could not "accurately or completely provide a comprehensive narrative of all criminal conduct and improprieties" of which he was aware at PCM because he did not have access to all company information. In that response, Lock advised Smith that the restriction on Smith's access to PCM information imposed on January 28, 2008 remained in effect until the completion of the internal investigation and the resolution of "issues regarding [Smith's] trustfulness . . . ."

111. Admitted in part and denied in part. It is admitted that on February 20, 2008, Carl A. Hoffman, Jr. provided a memo to Mr. Smith defining Smith's job duties. It is denied that this memo eliminated duties and responsibilities that Mr. Smith performed prior to his leave and proof thereof is demanded.

112. The averments contained in Paragraph 112 of Plaintiff's Complaint are admitted.

113. It is admitted that on or about February 22, 2008, Plaintiff replied in writing to Mrs. Hoffman-Schlegel confirming his ability to perform what he characterized as his essential job functions without accommodations. Mr. Smith's memo to Mrs. Hoffman-Schlegel indicated the need for accommodations for non-essential functions of his position. None of those requested accommodations were withheld

although none of those accommodations had to be made as none affected Mr. Smith's ability to perform his duties – essential or otherwise.

114.   Admitted in part and denied in part. It is admitted that on or about February 20, 2008, Carl A. Hoffman, Jr. directed Mr. Smith to detail his work activities. It is denied that the designated week was the week of February 25, 2008; it is averred, rather, that it was the week of February 27, 2008.

115.   It is admitted that Mr. Smith submitted to Carl A. Hoffman, Jr. an itinerary of his proposed actions. The week for which the itinerary was submitted was the week of February 27, 2008. Mr. Smith's submission to Dr. Hoffman was made on February 26, 2008 and not on February 25, 2008 as pleaded in Paragraph 115 of Plaintiff's Complaint. By way of further answer, it is averred that meetings with Wardens of facilities served by PCM were not included in the job description provided by Mr. Smith in the memo to Mr. Lock which detailed his job functions at the time of his leave. Mr. Smith had never previously made a request to spend a week making unannounced visits to various wardens and other officials throughout Pennsylvania and West Virginia.

116.   It is admitted that Plaintiff was prohibited by Carl A. Hoffman, Jr. from meeting with any warden or other official as proposed in his itinerary of February 26, 2008.

117.  The averments contained in Paragraph 117 of Plaintiff's Complaint are admitted.  By way of further answer, it is averred that the reprimand imposed upon Mr. Smith by Mrs. Hoffman-Schlegel was for deliberately and demonstrably lying to four (4) PCM officers and thereby violating PCM's Code of Conduct.

118.  The averments contained in Paragraph 118 of Plaintiff's Complaint are admitted.

119.  The averments contained in Paragraph 119 of Plaintiff's Complaint are admitted.

120.  The averments contained in Paragraph 120 of Plaintiff's Complaint are admitted although the substance of Plaintiff's comments are denied and proof thereof is demanded.

121.  After reasonable investigation Defendants are without sufficient information or belief to enable them to respond to the averments contained in paragraph 121of Plaintiff's Complaint.  By way of further answer, it is averred that while Smith may have made transparent his intentions to provide consulting services to public bodies engaged in correctional health care, he did not make such intentions known to any of the Defendants in this case.

122.  After reasonable investigation Defendants are without sufficient information or belief to enable them to respond to the averments contained in paragraph 122 of Plaintiff's Complaint.  It is admitted that Dr. Hoffman and Mr. Komykoski were

contacted by some wardens with whom PCM dealt and advised that they had been contacted by Mr. Smith about providing consultation services. Additionally, Dr. Hoffman and Mr. Komykoski were advised that Mr. Smith appeared at a public meeting of the Pike County Commissioners purportedly to solicit business as a consultant, but had to be asked to leave as a result of his unprofessional conduct. By way of further answer, it is averred that neither Dr. Hoffman nor Mr. Komykoski had any other means of knowing that Smith was communicating with representatives of correctional institutions for purposes of marketing Smith's services.

123. Admitted in part and denied in part. After reasonable investigation Defendants are without sufficient information or belief to enable them to respond to the averments contained in paragraph 123 of Plaintiff's Complaint, except that Defendants admit that Mr. Komykoski did send an email to PCM employees notifying them that Mr. Smith had terminated his employment with PCM on March 14, 2008 by walking off his job.

124. Denied and proof thereof is demanded.

125. It is denied that Mr. Komykoski sent the email attached as Exhibit 8 of Plaintiff's Complaint at the direction of Defendants PCM, Carl A Hoffman, Jr., Theresa M. Hoffman, and Joshua D. Lock.

## Count I

126.   Paragraph 126 of Plaintiff's Complaint requires no responsive pleading.

127.   Paragraph 127 of Plaintiff's Complaint states a legal conclusion to which no responsive pleading is required.

128.   Paragraph 128 of Plaintiff's Complaint states a legal conclusion to which no responsive pleading is required.

129.   Paragraph 129 of Plaintiff's Complaint states a legal conclusion to which no responsive pleading is required.

130.   Paragraph 130 of Plaintiff's Complaint states a legal conclusion to which no responsive pleading is required.

131.   Paragraph 131 of Plaintiff's Complaint states a legal conclusion to which no responsive pleading is required.

132.   It is admitted that the Defendants did not request that Mr. Smith provide certification as required by FMLA.  By way of further answer, it is averred that Mr. Smith was never on FMLA leave.

133.   It is admitted that the Defendants did not give Mr. Smith notice of a deadline to return to work.  No deadline was imposed upon Mr. Smith for the reasons referred to in paragraph 132 of this Answer which are incorporated herein.

134.   Admitted in part and denied in part.  It is admitted that in or about July, 2007, Mr. Smith advised all or some of the named Defendants that he was ready to return

to work.  It is denied that named Defendants rejected Plaintiff's requests to return to work and proof thereof is demanded.

135.   Paragraph 135 of Plaintiff's Complaint states a legal conclusion to which no responsive pleading is required.  By way of further answer, the allegation is denied and proof thereof is demanded.

136.   Paragraph 136 of Plaintiff's Complaint states a legal conclusion to which no responsive pleading is required.  By way of further answer, the allegation is denied and proof thereof is demanded.

137.   Paragraph 137 of Plaintiff's Complaint states a conclusion of law to which no responsive pleading is required.  By way of further answer, the allegations are denied and proof thereof is demanded.

138.   Paragraph 138 of Plaintiff's Complaint states a conclusion of law to which no responsive pleading is required.  By way of further answer, the allegations are denied and proof thereof is demanded.

139.   Paragraph 139 of Plaintiff's Complaint states a conclusion of law to which no responsive pleading is required.  By way of further answer, the allegations are denied and proof thereof is demanded.

140.   Paragraph 140 of Plaintiff's Complaint states a conclusion of law to which no responsive pleading is required.  By way of further answer, the allegations are denied and proof thereof is demanded.

141.  Paragraph 141 of Plaintiff's Complaint states a conclusion of law to which no responsive pleading is required.  By way of further answer, the allegations are denied and proof thereof is demanded.

142.  Paragraph 142 of Plaintiff's Complaint states a conclusion of law to which no responsive pleading is required.  By way of further answer, the allegations are denied and proof thereof is demanded.

143.  Paragraph 143 of Plaintiff's Complaint states a conclusion of law to which no responsive pleading is required.  By way of further answer, the allegations are denied and proof thereof is demanded.

144.  Paragraph 144 of Plaintiff's Complaint states a conclusion of law to which no responsive pleading is required.  By way of further answer, the allegations are denied and proof thereof is demanded.

145.  Paragraph 145 of Plaintiff's Complaint states a conclusion of law to which no responsive pleading is required.  By way of further answer, the allegations are denied and proof thereof is demanded.

146.  Paragraph 146 of Plaintiff's Complaint states a conclusion of law to which no responsive pleading is required.  By way of further answer, the allegations are denied and proof thereof is demanded.

147.  Paragraph 147 of Plaintiff's Complaint states a conclusion of law to which no responsive pleading is required.  By way of further answer, the allegations are denied and proof thereof is demanded.

148.  Paragraph 148 of Plaintiff's Complaint states a conclusion of law to which no responsive pleading is required.  By way of further answer, the allegations are denied and proof thereof is demanded.

149.  Paragraph 149 of Plaintiff's Complaint states a conclusion of law to which no responsive pleading is required.  By way of further answer, the allegations are denied and proof thereof is demanded.

150.  Paragraph 150 of Plaintiff's Complaint states a conclusion of law to which no responsive pleading is required.  By way of further answer, the allegations are denied and proof thereof is demanded.

151.  Paragraph 151 of Plaintiff's Complaint states a conclusion of law to which no responsive pleading is required.  By way of further answer, the allegations are denied and proof thereof is demanded.

152.  Paragraph 152 of Plaintiff's Complaint states a conclusion of law to which no responsive pleading is required.  By way of further answer, the allegations are denied and proof thereof is demanded.

WHEREFORE, Defendants pray Your Honorable Court to dismiss Plaintiff's Complaint.

## Count II

153. Paragraph 153 of Plaintiff's Complaint does not require a responsive pleading.

154. Paragraph 154 of Plaintiff's Complaint states a conclusion of law to which no responsive pleading is required. By way of further answer, the allegations are denied.

155. Paragraph 155 of Plaintiff's Complaint states a conclusion of law to which no responsive pleading is required. By way of further answer, the allegations are denied and proof thereof is demanded.

156. Paragraph 156 of Plaintiff's Complaint states a conclusion of law to which no responsive pleading is required. By way of further answer, the allegations are denied and proof thereof is demanded.

157. Paragraph 157 of Plaintiff's Complaint states a conclusion of law to which no responsive pleading is required. By way of further answer, the allegations are denied and proof thereof is demanded.

158. Paragraph 158 of Plaintiff's Complaint states a conclusion of law to which no responsive pleading is required. By way of further answer, the allegations are denied and proof thereof is demanded.

WHEREFORE, Defendants pray Your Honorable Court to dismiss Plaintiff's Complaint.

## Count III

159.   Paragraph 159 of Plaintiff's Complaint does not require a responsive pleading.

160.   Paragraph 160 of Plaintiff's Complaint states a conclusion of law to which no responsive pleading is required.  By way of further answer, the allegations are denied and proof thereof is demanded.

161.   Paragraph 161 of Plaintiff's Complaint states a conclusion of law to which no responsive pleading is required.  By way of further answer, the allegations are denied and proof thereof is demanded.

162.   Paragraph 162 of Plaintiff's Complaint states a conclusion of law to which no responsive pleading is required. By way of further answer, the allegations are denied and proof thereof is demanded.

163.   Paragraph 163 of Plaintiff's Complaint states a conclusion of law to which no responsive pleading is required. By way of further answer, the allegations are denied and proof thereof is demanded.

164.   Denied and proof thereof is demanded.

165.   Denied and proof thereof is demanded.

WHEREFORE, Defendants pray Your Honorable Court to dismiss Plaintiff's Complaint.

## Count IV

166. Paragraph 166 of Plaintiff's Complaint does not require a responsive pleading.

167. Paragraph 39 of this Answer is incorporated herein by reference.

168. Paragraph 167 of this Answer is incorporated herein by reference.

169. Paragraph 167 of Plaintiff's Complaint states a conclusion of law to which no responsive pleading is required.   To the extent an answer is required, the allegation is denied and proof thereof is demanded.

170. Paragraph 167 of this Answer is incorporated herein by reference.

171. Paragraph 171 of Plaintiff's Complaint states a conclusion of law to which no responsive pleading is required.   To the extent an answer is required, the allegation is denied and proof thereof is demanded.

WHEREFORE, Defendants pray Your Honorable Court to dismiss Plaintiff's Complaint.

## Count V

172. Paragraph 172 of Plaintiff's Complaint does not require a responsive pleading.

173. Paragraph 173 of Plaintiff's Complaint states a conclusion of law to which no responsive pleading is required.

174.   Paragraph 174 of Plaintiff's Complaint states a conclusion of law to which no responsive pleading is required.

175.   Denied and proof thereof is demanded.

176.   Denied and proof thereof is demanded.

177.   Denied and proof thereof is demanded.

WHEREFORE, Defendants pray Your Honorable Court to dismiss Plaintiff's Complaint.

### Count VI

178.   Paragraph 178 of Plaintiff's Complaint does not require a responsive pleading.

179.   Paragraph 179 of Plaintiff's Complaint states a conclusion of law to which no responsive pleading is required.

180.   The averments contained in Paragraph 180 of Plaintiff's Complaint are admitted.

181.   The averments contained in Paragraph 181 of Plaintiff's Complaint are admitted.

182.   The averments contained in Paragraph 182 of Plaintiff's Complaint are admitted.  By way of further answer, the averments contained in Paragraphs 39 of this Answer are incorporated herein by reference.

183.   The averments contained in Paragraph 183 of Plaintiff's Complaint are admitted.  By way of further answer, the averments contained in Paragraphs 39 of this Answer are incorporated herein by reference.

184.   Paragraph 184 of Plaintiff's Complaint states a legal conclusion to which no responsive pleading is required.

185.   The averments contained in Paragraph 185 of Plaintiff's Complaint are denied.  By way of further answer, Paragraphs 39of this Answer are incorporated herein by reference.

186.   Paragraph 186 of Plaintiff's Complaint states a legal conclusion to which no responsive pleading is required.   To the extent an answer is required, the Defendants deny the allegation and proof thereof is demanded.

187.   Paragraph 187 of Plaintiff's Complaint states a legal conclusion to which no responsive pleading is required. To the extent an answer is required, the Defendants deny the allegation and proof thereof is demanded.

WHEREFORE, Defendants pray Your Honorable Court to dismiss Plaintiff's Complaint.

## Count VII

188.   Paragraph 188 of Plaintiff's Complaint does not require a responsive pleading.

189.   Paragraph 189 of Plaintiff's Complaint states a legal conclusion to which no responsive pleading is required. To the extent an answer is required, the Defendants deny the allegation and proof thereof is demanded.

190.   Paragraph 190 of Plaintiff's Complaint states a legal conclusion to which no responsive pleading is required. To the extent an answer is required, the Defendants deny the allegation and proof thereof is demanded.

191.   After reasonable investigation, Defendants are without knowledge or information sufficient to form a belief as to the truthfulness of the averments contained in Paragraph 191 of Plaintiff's Complaint.

192.   Denied and proof thereof is demanded.

WHEREFORE, Defendants pray Your Honorable Court to dismiss Plaintiff's Complaint.

Respectfully Submitted,

/s/     Michael J. Crocenzi
Michael J. Crocenzi, Esquire
Attorney I.D. No. 66255
Thomas J. Weber, Esquire
I.D. # 58853
Thomas E. Brenner, Esq.
I.D. #32085
320 Market Street, 3rd Floor
Strawberry Square
P. O. Box 1268
Harrisburg, PA  17108-1268
717-234-4161

December 5, 2008

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 5th day of December, 2008, I caused the foregoing document to be filed via ECF and that Michael J. Crocenzi, Esquire, is a filing user under the ECF system.   Upon the electronic filing of a pleading or other document, the ECF system will automatically generate and send a Notice of Electronic Filing to all filing users associated with this case.   Electronic service by the Court of the Notice of Electronic Filing constitutes service of the filed document and no additional service upon the filing user is required.

GOLDBERG KATZMAN, P.C.


/s/     Michael J. Crocenzi
Michael J. Crocenzi, Esquire
Attorney I.D. No. 66255
Thomas J. Weber, Esquire
I.D. # 58853
Thomas E. Brenner, Esq.
I.D. #32085
320 Market Street
Strawberry Square
P. O. Box 1268
Harrisburg, PA  17108-1268
(717) 234-4161

167096.1