**EXHIBIT F**

**DEPOSITION TRANSCRIPT**
**JOSHUA LOCK, ESQUIRE**

*(Relevant Pages Only)*

EXHIBIT

ALL-STATE LEGAL®

F

UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


RICHARD C. SMITH,                        :

           PLAINTIFF                   :

                                 :

VS                                       :

                              :NO: 1-08-CV-1397

PRIMECARE MEDICAL, INC., CARL A.         :

HOFFMAN, JR., D.O., THERESA M.           :

HOFFMAN, JOSHUA D. LOCK, MARCY           :

HOFFMAN-SCHLEGEL, FRANK                  :

KOMYKOSKI, AND KNIGHTS OF                :

VON DUKE, LTD.,                          :

           DEFENDANTS                  :


DEPOSITION OF:    JOSHUA D. LOCK, ESQUIRE


TAKEN BY:         PLAINTIFF


BEFORE:           MELISSA FLINN, REPORTER
                  NOTARY PUBLIC

DATE:             JUNE 9, 2009, 8:03 A.M.

PLACE:            CLARK & KREVSKY

                  2O ERFORD ROAD, SUITE 300A

                  CAMP HILL, PENNSYLVANIA

162

1   I transmitted the document, so there would have
2   been at least three people present at that meeting,
3   that much I can say.
4       Q       But you were handed the document by
5   Dr. Hoffman?
6       A       Probably Mr. Crocenzi, when I was down
7   at the law office, but I don't know that with
8   certainty, or he e-mailed it or whatever.
9       Q       Did you have any specific instruction
10  from Dr. Hoffman in how to present it to Mr. Smith?
11      A       No, no.  I was asked to present it to
12  him.  I wasn't told how to do it.
13      Q       Was there any particular message that
14  you were asked by Dr. Hoffman to communicate to Mr.
15  Smith?
16      A       Not that I recall.  I do -- and I
17  think not, because there was some flexibility in
18  Dr. Hoffman's position.  Mr. Smith said, What about
19  this right here, health care, for example.  Health
20  insurance was an issue.  And there were one or two
21  other points, not insignificant points, but not as
22  significant as the amount and duration of the
23  payments that were brought up.
24          And I remember those because I said I
25  felt fairly confident that I could satisfy his

163

1   wishes with respect to those points.
2       Q       I'm sorry to stop you.  Are you
3   recounting part of your discussion with Dr. Hoffman
4   prior to presenting the letter to Mr. Smith?
5       A       No, Mr. Smith.
6       Q       My question really is focused on your
7   discussion with Dr. Hoffman preliminary --
8       A       I was --
9       Q       Let me finish my question.  My
10  question is focused on your discussions with
11  Dr. Hoffman preliminary to presenting the document
12  to Mr. Smith.
13      A       I'm sorry, I thought I answered that
14  question.  In fact, I'm reasonably certain that I
15  did and I said I wasn't given any instructions, I
16  was told to give him the document.
17      Q       Now, you met with him at the Eat'n
18  Park to give him the document.
19      A       That's right.
20      Q       Describe to me what happened in that
21  meeting.
22      A       Well, I thought I just did, but if I
23  didn't, let me repeat myself.  He read it; he
24  raised issues with respect to several provisions of
25  the agreement.  Some were less important than

164

1   others, with respect to those.  I told him I
2   thought I could probably accommodate his wishes.
3           I specifically remember telling him
4   that as a result of the December 10th letter, that
5   I did not believe that I would be able to increase
6   the amount of the annual payment from what it had
7   been, 120, 130 whatever -- or from 100 rather,
8   which I think was in the agreement.  Once again, I
9   don't have the agreement in front of me, so I'm not
10  certain to that other amount.
11          I said, Let it go for a year, it
12  probably won't take that long, you know Carl, he's
13  a soft touch, you can get what you want, just play
14  your cards a little smarter.  I don't think I said
15  it that way, quite frankly, but that was the
16  essence of the discussion.
17      Q       How long was this meeting?
18      A       I don't know.  I remember Rick had
19  something to eat, I may have; perhaps half an hour,
20  45 minutes, I don't know.  He had to read the --
21  probably closer to 45 minutes.
22      Q       Did you have any contact with Rick
23  after the presentation of that agreement?
24      A       I can remember a phone call sometime
25  shortly after that.  I can't tell you how long

165

1   following that meeting.  Mr. Smith was on his way
2   to Pittsburgh to visit with his mother and called
3   from the road and we talked about the status of
4   things at that point.
5       Q       What was the discussion?
6       A       The only portion of that discussion I
7   remember was an overt threat made by Mr. Smith
8   against Dr. Hoffman, in which Mr. Smith indicated
9   he had sufficient equity in this vacation home to
10  finance any litigation he chose to pursue.  It's
11  the first and only time I remember him making a
12  threat.
13      Q       What was your response to that?
14      A       It just reconfirmed the change of
15  opinion I had after I read that December 10th
16  letter.
17      Q       I didn't ask your reaction, I said
18  your response.
19      A       I don't know what I responded to it.
20  I doubt that I called him an idiot, but I wouldn't
21  be surprised if I said something close to that.
22      Q       Did you tell Dr. Hoffman the content
23  of this discussion?
24      A       Well, as the designated intermediary,
25  I felt it behooved me to communicate with each

JOSHUA LOCK
June 9, 2009

SMITH VS
PRIME CARE

---

**262**

1    Q    The company presumed that the
2  allegations were true until they were proven false
3  by the review?
4            MR. CROCENZI:  I'm instructing the
5  witness not to answer the question.  We're at our
6  seven-hour limit and we're going to leave.
7            MR. CLARK:  If he answers this
8  question, it could probably save a lot of heartache
9  for you and for me.
10           MR. CROCENZI:  Are you telling me this
11  is the very last question you are going to ask him
12  for this deposition?
13           MR. CLARK:  I'm not promising, but it
14  may well be.
15           MR. CROCENZI:  If you can promise me
16  this is the very last question --
17           MR. CLARK:  I will not make the
18  promise.
19           MR. CROCENZI:  Then we're going to
20  leave.
21           MR. CLARK:  Mike, this is really
22  unnecessary.
23           MR. CROCENZI:  Frank, I've been
24  through a lot of depositions with you.  You go on
25  and on and on.  If you can tell me this is the last

---

**263**

1  question, Josh will answer it and we'll walk out.
2            MR. CLARK:  I can't make that promise,
3  but I need to hear the answer first.  It may well
4  be.
5            MR. CROCENZI:  I'm sorry.  We can get
6  Judge Kane to answer it.
7            MR. CLARK:  You and I still need to
8  talk about some discovery stuff.
9            MR. CROCENZI:  I'm still looking for
10  it, like this e-mail I just saw right here
11  (indicating.).
12           MR. CLARK:  I'm going to amend the
13  answer, but I need to work out this confidentially
14  agreement with you.
15           MR. CROCENZI:  Yes, I agree.
16           MR. CLARK:  I'm waiting for language
17  from you on that.
18           MR. CROCENZI:  I know you are.  It's
19  not a problem.  I'll get it to you.
20           MR. CLARK:  Well, I need this worked
21  out by, certainly, tomorrow.
22           COURT REPORTER:  Do you want this on
23  the record?
24           MR. CLARK:  Yes, I think I do want it
25  on the record.

---

**264**

1            MR. CROCENZI:  What does this have to
2  do with the deposition?  I'm not going to put it on
3  the record.  If you want to talk about generalities
4  regarding the case, we'll go off the record.  If
5  you want to talk about this deposition, I'll be
6  glad to put it on the record.
7            MR. CLARK:  Why don't you want to put
8  it on the record?
9            MR. CROCENZI:  Because it's not
10  related to the deposition.
11           MR. CLARK:  When am I going to get the
12  confidentiality language?
13           MR. CROCENZI:  Are we off the record?
14           MR. CLARK:  I'm not off the record.
15           MR. CROCENZI:  Then I'm not going to
16  answer the question.  I'll be glad to talk to you,
17  Frank, about a lot of things with this case.  There
18  are a number of issues that we need to resolve yet.
19  But it's unnecessary to do it on the record in
20  relation to a deposition of Joshua Lock.
21           MR. CLARK:  I hear your point.  I wish
22  I could agree.
23           MR. CROCENZI:  Okay.
24           MR. CLARK:  Have a good night.
25    (The deposition was concluded at 4:16 p.m.)

---

**265**

1  STATE OF PENNSYLVANIA   :  ss.
2  COUNTY OF DAUPHIN        :
3            I, Melissa Flinn, a Reporter-Notary Public
4  authorized to administer oaths within and for the
5  Commonwealth of Pennsylvania and take depositions
6  in the trial of causes, do hereby certify that the
7  foregoing is the testimony of JOSHUA D. LOCK,
8  ESQUIRE.
9            I further certify that before the taking
10  of said deposition, the witness was duly sworn;
11  that the questions and answers were taken down
12  stenographically by the said reporter Melissa
13  Flinn, a Reporter approved and agreed to, and
14  afterwards reduced to typewriting under the
15  direction of the said Reporter.
16           I further certify that the proceedings and
17  evidence contained fully and accurately in the
18  notes by me on the within deposition, and that this
19  copy is a correct transcript of the same.
20           In testimony whereof, I have hereunto
21  subscribed my hand this 20th day of June,
22  2009.
23           _____
                 Melissa Flinn
24
25  My commission expires:

67  (Pages 262 to 265)