**EXHIBIT 6**

January 28, 2008

Carl A. Hoffman, Jr., D.O., CCHP
President/Corporate Medical Director
PrimeCare Medical, Inc.
3940 Locust Lane
Harrisburg, PA 17109

Dear Dr. Hoffman:

      The purpose of this correspondence is to alert you and PrimeCare Medical, Inc. (hereinafter referred to as "the Corporation") as to likely waste and wrongdoing in regard to the Corporation's business practices in medical contracts with several counties in the Commonwealth of Pennsylvania and in the Division of Juvenile Services and Regional Jails in the State of West Virginia.

<u>**County Medical Contracts, Commonwealth of Pennsylvania**</u>

Dauphin County Prison, Harrisburg, PA

      It has been a routine practice of the Corporation to leave positions vacant and thereby under-fill contractually-required staffing minimums in our county contracts. As a result, the Corporation gains revenue for contractually-mandated services that it does not provide. Examples of this practice in Dauphin County include required nursing positions left vacant, a required Nurse Supervisor position left vacant and ten (10) hours per week of Psychiatric care that the Corporation has knowingly failed to provide. All of these items are specifically required by the Dauphin County contract. The Psychiatry hours alone result in revenue for unprovided services amounting to approximately $104,000 per year. This practice has contributed to the following gross margin at the Dauphin County Prison in 2006:

| YEAR | GROSS REVENUE | GROSS MARGIN | GROSS MARGIN % OF REVENUE |
|---|---|---|---|
| 2006 | $3,000,000 | $915,000 | 30% |

Note: The Corporation (PrimeCare Medical, Inc. presently and Pennsylvania Institutional Health Services formerly) has been retained by Dauphin County for nineteen (19) years.

      This practice could be regarded as substantial abuse, misuse, destruction or loss of funds or resources owing to Dauphin County.

      I discussed the unprovided psychiatric hours with Dr. Enos Martin at great length. I had asked him if he would provide the hours not covered. I continually asked you to give authority to provide the required services and you continually denied my requests. These types of decisions rest solely with you given the fact that you personally supervise and manage this contract.

      These types of business practices compromise the integrity of the Corporation and diminish the public's confidence in its ability to provide reputable service. The substantial gross margin realized by the Corporation on this contract adds to the

Case 1:08-cv-01397-YK   Document 39-7   Filed 09/01/09   Page 3 of 5

appearance that the Corporation is intentionally billing Dauphin County for unprovided services and committing a fraud on the County.

Lancaster County Prison, Lancaster, PA

Lancaster County is a relatively new contract for the Corporation. The situation currently occurring is an example of steadily deteriorating operations by the Corporation as shortcuts are made to improve profits while jeopardizing patient care.

This contract requires on-site physician services. It is currently being run on-site by Rod Hostetter, a Physician Assistant with relatively little experience in correctional medicine. He is to be supervised by Dr. Eric Von Kiel the Assistant Corporate Medical Director, who is spread dangerously thin at several facilities. He is rarely on-site to supervise Mr. Hostetter. This is a violation of the Medical Practice Act since his work must be reviewed regularly by the supervising Physician. It would also be a violation of express or implied warranties in the Corporation's contract with the County. Regardless, the Corporation continues to accept revenue from Lancaster County as if the contract were being fully performed. Instead, the Corporation is knowingly implementing shortcuts that leave patient care severely compromised.

I continually questioned you concerning the Corporation's increased use of mid-level practitioners (physician assistants and nurse practitioners). The Corporation was using these practitioners to reduce costs and increase profits, even though its contract required professional services from an M.D. or D.O. No credit was offered to the state or county agencies for the reduced overhead of these providers. The Corporation was also engaging in questionable practices regarding compliance with regulations.

## West Virginia Division of Juvenile Services/West Virginia Regional Jail Authority

The Corporation was cited in 2006 by the West Virginia Division of Juvenile Services for its failure to provide the "contractually required on-site services for physicians". This prompted my request to corporate operations staff to review not only the Division of Juvenile Services contracts but also the West Virginia Regional Jail contract. Widespread deficiencies were discovered at nearly all facilities in physician hours on-site. I argued continually in public meetings attended by you and the Corporation's Vice-Presidents and Officers and in meetings that included all corporate office managers as well as private meetings with you that the Corporation needed to make correction of these severe deficiencies a "top priority". I pointed out that failure to provide these basic services undermines the public trust in the corporation and could result in legal actions against the Corporation and cancellation of the Regional Jail contract. These unethical practices yielded the following approximate windfall gross margins at the following West Virginia Regional Jails and Juvenile facilities in 2006:

2

West Virginia Regional Jails

| Facility (Jail) | Revenues | Gross Margin | Gross Margin % of Revenues |
|---|---|---|---|
| Southern Regional | $ 1,500,000 | $ 400,000 | 26% |
| South Central Regional | 2,000,000 | 500,000 | 25% |
| Northern Regional | 2,000,000 | 650,000 | 32% |
| North Central Regional | 1,800,000 | 460,000 | 25% |
| Western Regional | 1,600,000 | 500,000 | 31% |
| Eastern Regional | 1,000,000 | 130,000 | 13% |
| Central Regional | 875,000 | 270,000 | 30% |
| Potomac Highlands | 750,000 | 130,000 | 17% |
| Tygart Valley Regional | 1,000,000 | (10,000) | (.01%) |
| Southwestern Regional | 925,000 | ( 6,000) | (.006%) |
| **TOTALS:** | **$13,450,000** | **$3,024,000** | **22%** |

Note: The Corporation (PrimeCare Medical, Inc. presently and Pennsylvania Institutional Health Services formerly) has held these contracts since 1993 (14 years).

West Virginia Division of Juvenile Services:

| Facility (Jail) | Revenues | Gross Margin | Gross Margin % of Revenues |
|---|---|---|---|
| Industrial Home for Youth | $ 835,000 | $ 420,000 | 50% |
| Davis Juvenile Center | 410,000 | 250,000 | 60% |
| Donald R. Koon Juvenile Center | 200,000 | 30,000 | 15% |
| Chick Backbee Juvenile Center | 150,000 | (2,500) | (.01%) |
| Tiger Morton Juvenile Center | 150,000 | (26,500) | (17%) |
| North Central Juvenile Center | 150,000 | 8,000 | .05% |
| Southern Juvenile Detention Ctr. | 150,000 | 14,000 | .09% |
| Gene Spodaro Juvenile Center | 155,000 | 18,000 | 11% |
| Robert Shell Juvenile Center | 150,000 | (10,500) | (.07%) |
| Vicki Douglas Juvenile Center | 70,000 | (8,500) | (.12%) |
| **TOTALS:** | **$2,420,000** | **692,000** | **28%** |

     Many of the West Virginia Juvenile and Adult facilities are overcrowded and operating above the capacities cited in the original contracts. When this occurs the Corporation receives additional revenues as a per diem or per day/per inmate amount for this overage. The Corporation is expected to increase all services (nurse, physician, physician assistant and nurse practitioner hours) accordingly with these funds. At the time of the review by corporate operations staff the Corporation was nowhere close to fulfilling its obligations for base services let alone the additional hours required due to overcrowding.
     As I continually reminded you these practices are especially egregious considering the level of profits the Corporation was reaping. The Corporation (previously known as Pennsylvania Institutional Health Services, Inc.) founded by you has a history of failure to provide services required by contracts dating back to 1989.

When I was hired in March, 1990, the Corporation was embroiled in an investigation by the Pennsylvania Office of the Inspector General at the request of the Pennsylvania Department of Corrections for failure to provide contractually required physician services and on-site physician specialist services. At that time, you attempted to include physician on-call time in the required hours. I pointed out to you that this was not previously accepted in the early 1990's investigation in Pennsylvania and would not be accepted by the West Virginia corrections systems. Despite my caution, you continued to direct managers in West Virginia to log and document these hours on the provider time records.

As I brought these issues to your attention over the years, my level of authority and access to information lessened at each site where issues arose. You reassigned me from activities that provided direct contact with facilities and clients/wardens and from decision-making processes to duties in the corporate office. Other Vice-Presidents, who did not possess my level of correctional expertise, were given oversight of these contracts.

The Dauphin County prison has never been bid since the Corporation was awarded the contract in 1988 – 19 years ago. The West Virginia Regional Jails have been continuously awarded to the Corporation since 1993 – 14 years ago and the West Virginia Division of Juvenile Services were awarded to the Corporation at their inception several years ago.

The investigation at SCI-Camp Hill along with other events led to the cancellation of Camp Hill and four (4) other large Pennsylvania state prison medical contracts which devastated the Corporation and resulted in the loss of approximately 72% of the Corporation's business. The types of business practices discussed in this correspondence involves 35 to 40% (including the Dauphin county Prison) of the Corporation's current business. All the Corporation's contracts could be in jeopardy when these practices are discovered by the various state and county agencies.

I also pointed out to you that the correctional medical industry is considered professional services which entail the awarding of contracts based on the Corporation's reputation, integrity, character and business practices. The situation in Dauphin County is similar to those found in Berks, Franklin and other Pennsylvania county facilities.

As an officer of the Corporation, I believe it is my obligation to recommend that these transactions be independently audited and appropriate corrective action taken.

Sincerely,

*Richard C. Smith, MS, CCHP*
Richard C. Smith, MS, CCHP
Vice President for Operations

Cc: Joshua Lock, Esq.,
    Vice President of Legal Affairs and Human Resources
    Frank P. Clark, Esq.

4