## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RICHARD C. SMITH,** | : | **No. 1:08-cv-1397** |
| **Plaintiff** | : | **Civil Action – Law** |
| | : | |
| **vs.** | : | |
| | : | |
| **PRIMECARE MEDICAL, INC.,** | : | **Chief Judge Kane** |
| **CARL A. HOFFMAN, JR., D.O.,** | : | |
| **THERESA M. HOFFMAN,** | : | |
| **JOSHUA D. LOCK,** | : | **Jury Trial Demanded** |
| **MARCY HOFFMAN-SCHLEGEL,** | : | |
| **FRANK KOMYKOSKI, and** | : | |
| **KNIGHTS OF VON DUKE, LTD.,** | : | |
| **Defendants** | : | |

## DEFENDANTS' BRIEF IN RESPONSE
## TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Michael J. Crocenzi, Esquire
Thomas J. Weber, Esquire
Goldberg Katzman, P.C.
320 Market Street, Strawberry Square
P.O. Box 1268
Harrisburg, PA   17108-1268
(717) 234-4161
*Attorneys for Defendants*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... ii

I.    COUNTER-STATEMENT OF THE FACTS ............................................ 1

II.   COUNTER-STATEMENT OF QUESTIONS INVOLVED ..................... 1

    A.    Did Smith fail to prove that he is entitled to summary
        judgment on his FMLA interference claim? ..................................... 1

    B.    Did Smith fail to prove that he is entitled to summary
        judgment on his Pennsylvania Whistleblower claim? ..................... 1

III.  ARGUMENT ..................................................................................... 1

    A.    Smith failed to prove that he is entitled to summary
        judgment on his FMLA interference claim. ................................... 1

        1.    *Notice of rights and responsibilities pursuant to the
            FMLA.* ...................................................................................... 2

        2.    *Fitness for Duty Certification* ...................................................... 4

        3.    *Reinstatement* ............................................................................. 5

    B.    Smith has failed to prove that he is entitled to summary
        judgment on the Pennsylvania Whistleblower claim. ...................... 7

        1.    *PrimeCare is not a "public body."* ............................................. 8

        2.    *Smith's January 28, 2008 letter to Dr. Hoffman was not a
            good faith report of waste and wrongdoing.* ............................ 14

IV.   CONCLUSION ............................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

Brandau v. ACS, Inc., 2006 WL 2460891 (E.D. Pa. 8/22/06).............. 10, 11, 13, 14

Cipriani v. Lycoming County Housing Authority, 177 F. Supp. 2d 303
    (M.D. Pa. 2001)...................................................................................... 15

Cohen v. Salick Health Care, Inc., 772 F.Supp. 1521 (E.D. Pa. 1991) .9, 10, 11, 14,
    16

Conoshenti v. Public Service Electric & Gas Company, 364 F. 3d 135
    (3rd Cir. 2004)............................................................................................ 2

Denton v. Silver Stream Nursing and Rehabilitation Center, 739 A.2d 571
    (Pa. Super. 1999)..................................................................... 12, 13, 14

Fogleman v. Greater Hazleton Health Alliance, 122 Fed.Appx. 581,
    2004 WL 2965392 (3rd Cir. 2004) ........................................... 2, 3, 5, 6

Hayduk v. City of Johnstown, 2008 WL 2669477 (W.D. Pa. 2008) ........................ 5

Krajsa v. Keypunch, Inc., 622 A.2d 355, 424 Pa. Super. 230 (1993)..10, 11, 12, 13,
    14, 16

Pinson v. Berkley Medical Resources, Inc., 2005 WL 3210950 (W.D. Pa. 2005)... 2

Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81 (2002) ................................ 2

Riggio v. Burns and Medical College of Pennsylvania, 711 A.2d 497
    (Pa. Super. 1998)..................................................................... 12, 13, 14

Robertson v. Allied Signal, Inc., 914 F.2d 360 (3rd Cir. 1990)................................ 9

Yandrisevitz v. H.T. Lyons, Inc., 2009 WL 2195139  (E.D. Pa. 2009).................... 6

**Statutes**

29 U.S.C.A. §2614(a)(3)(B)..................................................................................... 6

43 Pa.C.S. §1422 .......................................................................................... 8, 9, 14

43 Pa.C.S. §1423(a).................................................................................................. 8

63 P.S. §422.13 (d).................................................................................................. 18

**Regulations**

29 C.F.R. §825.214(b)............................................................................................. 5

49 Pa. Code §18.151................................................................................................ 18

49 Pa. Code §18.153................................................................................................ 18

## I.   COUNTER-STATEMENT OF THE FACTS

In his brief, the Plaintiff, Richard C. Smith ("Smith"), referred to his

Statement of Material Undisputed Facts as the statement of the facts in the case.

The Defendants have filed a response to this Statement as a counter-statement of

the facts.

## II.   COUNTER-STATEMENT OF QUESTIONS INVOLVED[1]

A.   **Did Smith fail to prove that he is entitled to summary judgment on his FMLA interference claim?**

   **(Answer: Yes)**

B.   **Did Smith fail to prove that he is entitled to summary judgment on his Pennsylvania Whistleblower claim?**

   **(Answer: Yes)**

## III.   ARGUMENT

A.   **Smith failed to prove that he is entitled to summary judgment on his FMLA interference claim.**

Smith argues that the Defendants interfered with his FMLA rights by

(1) failing to provide him notice of his rights under the FMLA at the time he

took his leave in May 2007, (2) failing to inform him that he needed a fitness

---

[1] The Defendants filed a Motion for Summary Judgment and supporting brief regarding these issues and all other claims contained in Smith's Complaint (Doc #33 & #37).

1

for duty certification to return to work, and (3) failing to return him to his full job responsibilities.

> *1.    Notice of rights and responsibilities pursuant to the FMLA.*

In order to prove FMLA interference, a plaintiff must show he suffered prejudice as a result of a violation of the Act.   Conoshenti v. Public Service Electric & Gas Company, 364 F. 3d 135, 144 (3rd Cir. 2004), *citing* Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81 (2002).  *See also* Fogleman v. Greater Hazleton Health Alliance, 122 Fed.Appx. 581, 587, 2004 WL 2965392, *4 (3rd Cir. 2004) ("*Conoshenti* held that an employer's failure to advise could constitute a violation of one's FMLA rights, but only if the employee could show resulting prejudice.").  To prevail on a "failure to advise" interference claim, an employee must prove he would have structured his leave so as to be protected by the FMLA had the employer advised him of his FMLA rights.   Pinson v. Berkley Medical Resources, Inc., 2005 WL 3210950 (W.D. Pa. 2005).

Even though Smith was aware the Defendants were subject to the FMLA and the FMLA was discussed in the Defendants' policies and procedures manual, it is undisputed that the Defendants did not advise Smith of his rights under the FMLA at the time he took his leave in May 2007. (SMF #20). In lieu of unpaid FMLA leave, Dr. Carl Hoffman, President of PrimeCare Medical, Inc.

2

("PrimeCare"), granted Smith a medical leave of absence with full pay and benefits. (Defendants' Supplemental Response (DSR) #6 to SMF).[2] As a result, Smith cannot show that the Defendants' failure to notify him of his FMLA rights caused him any prejudice. Furthermore, Smith's leave of absence started on May 10, 2007, and the 12 weeks of any unpaid FMLA leave would have expired as of August 1, 2007. Smith's physician did not clear him to return to work until September 20, 2007. (DSR #29). Thus, Smith was unable to work due to a serious medical condition for greater than 12 consecutive weeks after May 10, 2007. Smith would not have been able to structure his leave so as to be protected by the FMLA even if the Defendants had provided him notice of his FMLA rights on or about May 10, 2007.

In Fogleman, the Third Circuit held the plaintiff could not show prejudice because "she did not establish that she would have been able to return to work at the end of the 12-week period without accommodation." Fogleman, 2004 WL 2965392 at *4. Likewise, as shown above, Smith could not have altered his leave in order to return to work within 12 weeks after May 10, 2007 and thus be afforded any protection under the FMLA.

---

[2] Smith did not have any paid leave time left as of May 10, 2007. (DSR #7).

3

2.  *Fitness for Duty Certification*

It is undisputed that the Defendants did not inform Smith that he needed a fitness for duty certification pursuant to the FMLA for him to return to work. (SMF #21). As argued in the previous subsection, however, Smith has not shown the requisite prejudice for him to prevail on this issue.  Any lack of notice of a fitness for duty certification is moot because Smith was unable to work for more than 12 consecutive weeks after his leave started on May 10, 2007.  He could not have even produced a fitness for duty certification prior to the expiration of his 12 weeks of FMLA leave.

Secondly, the parties never even contemplated that Smith's leave of absence would be covered under the FMLA.  Dr. Hoffman wanted to provide a more generous leave of absence than Smith could ever expect under the FMLA.  Smith never considered FMLA an issue. (Response to SMF #21). Therefore, Dr. Hoffman simply followed the Defendants' leave of absence policy and told Smith that he needed to provide a letter from his physician when he was finally able to return to work. (DSR #8). Dr. Hoffman deferred to the treating doctor's assessment whether Smith was 100%. (Response to SMF #28). When Smith finally provided a note from his physician on January 23, 2008, the Defendants promptly returned Smith to his position of V.P. of Operations.  A fitness for duty certification was neither a precondition for nor, an impediment to, Smith obtaining leave under the FMLA.

4

See Hayduk v. City of Johnstown, 2008 WL 2669477 (W.D. Pa. 2008) ("Since the record is clear that Defendant never so much as contemplated offering Plaintiff FMLA leave, Defendant's insistence that Plaintiff obtain a doctor's excuse after every absence was neither a precondition for nor an impediment to Plaintiff obtaining leave under the FMLA.  There was therefore no interference and hence no violation; that claim must fail." Id. at * 31).

Finally, Smith suffered no harm contemplated by the FMLA because he lost no compensation from any alleged violation of the regulations regarding a fitness for duty certification.[3]  See Hayduk at * 31.

### 3.    Reinstatement

Again, as argued above, Smith did not have any protection under the FMLA by the time his physician released him to return to work on September 20, 2007. The FMLA regulations state that "if the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition, the employee has no right to restoration to another position under the FMLA." 29 C.F.R. §825.214(b).  In Fogleman, the court rejected a plaintiff's FMLA interference claim by concluding that the plaintiff "cannot show prejudice because she did not establish that she would have

---

[3] In fact, he received much more than he would have under the FMLA, including the payment of not only full salary, but two discretionary bonuses.  (8/28/09 Hoffman Aff. ¶6 & 8).

5

been able to return to work at the end of the twelve-week period without accommodation." Id. at *4.

Secondly, reinstatement is not absolute. It is "qualified by a statutory directive that it does not entitle an employee to a right, benefit or position to which the employee would not 'have been entitled had the employee not taken the leave.' 29 U.S.C.A. §2614(a)(3)(B)." Yandrisevitz v. H.T. Lyons, Inc., 2009 WL 2195139 *9 (E.D. Pa. 2009). "If the employer can show that it refused to reinstate the employee for a reason wholly unrelated to the FMLA leave, the employer is not liable." Id. at *10.

In the present case, the Defendants did in fact reinstate Smith to his position of V.P. of Operations with the same salary and benefits. Any alleged changes to his job when he returned to work on January 28, 2008 were *de minimis* and/or had nothing to do with his leave. (SMF #39-43). Limiting Smith's access to the building to regular working hours, limiting Smith's access to reports and documents, and having Dr. Hoffman determine who would type Smith's work were *de minimis* and did not affect Smith's essential functions of his job. (SMF and responses #38, 40, 41). When Smith refused to submit information about his narcotic medication, this issue was not pursued further. (Response to SMF #42). There was no harm to Smith. Requesting a job description from Smith was also a *de minimis* requirement and did not affect how Smith performed his job. The job

6

description was prompted by Dr. Hoffman's valid concerns about exactly what it was Smith was doing for the company. (Response to SMF #38).  Smith was not permitted to contact or visit wardens or other clients because Dr. Hoffman had learned during Smith's leave that Smith had offended some wardens with his demeanor and actions. (DSR #17). Dr. Hoffman did not give Smith any specific work assignments after Smith submitted the letter of January 28, 2008 alleging waste and wrongdoing pending the outcome of an independent investigation into the allegations, which is exactly what Smith had requested. (Response to SMF #110). Again, Dr. Hoffman's decisions had nothing to do with Smith's leave of absence.

The Defendants have presented sufficient evidence to prove that any change in the terms and conditions of Smith's job upon his return to work on January 28, 2008 were either *de minimis* and/or had nothing to do with his leave of absence, and, thus, Smith is not entitled to summary judgment on this issue.

### B.   Smith has failed to prove that he is entitled to summary judgment on the Pennsylvania Whistleblower claim.

The Pennsylvania Whistleblower Law makes it unlawful for an employer to "discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions or location or privileges of employment because the employee or a person acting on behalf of the employee

7

makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste." 43 Pa.C.S. §1423(a).

"Employee" is defined as "a person who performs a service for wages or other remuneration under a contract of hire, written or oral, expressed or implied, for a ***public body***." 43 Pa.C.S. §1422. (emphasis added).

"Public body" is defined as follows:

> (3)  Any other body which is created by Commonwealth or political subdivision authority or which is funded in any amount by or through Commonwealth or political subdivision authority or a member or employee of that body.

42 Pa.C.S. §1422.[4]

*1.    PrimeCare is not a "public body."*

PrimeCare is a private, for-profit Pennsylvania corporation. (DSR #2). Counties and authorities contract with PrimeCare to provide medical services for inmates and detainees in juvenile correctional facilities, jails, and prisons. PrimeCare is currently managing healthcare service contracts in fifty-three (53) correctional facilities in three (3) states, including New Hampshire, Pennsylvania, and West Virginia. (DSR #5). Because PrimeCare is a private, for-profit Pennsylvania corporation, Smith must prove PrimeCare "is funded in any amount

---

[4] The other two public bodies (1) and (2) are clearly not applicable.

by or through Commonwealth or political subdivision authority" in order to be afforded any protection under the Pennsylvania Whistleblower Law.   43 Pa.C.S. §1422.

    To date, the Pennsylvania Supreme Court has not interpreted the meaning of "public body" as that term is defined in the Whistleblower Law.   In the absence of a definitive ruling by the Pennsylvania Supreme Court, the District Court must predict how the Pennsylvania Supreme Court would rule if presented with the question.   Robertson v. Allied Signal, Inc., 914 F.2d 360, 378 (3rd Cir. 1990).

    The United States District Court for the Eastern District of Pennsylvania has had an opportunity to decide whether for-profit corporations that contract for services with the Commonwealth or a political subdivision authority are considered to have been "funded in any amount by or through Commonwealth or political subdivision authority."   In Cohen v. Salick Health Care, Inc., 772 F.Supp. 1521 (E.D. Pa. 1991), the plaintiff alleged Salick Health Care fired her in violation of the Pennsylvania Whistleblower Law.   Salick was a for-profit California corporation doing business in Pennsylvania.   Salick entered into a contract with Temple University to operate and manage an outpatient cancer center at Temple University Hospital.   The issue was whether Salick was funded in any amount by or through Commonwealth or political subdivision authority pursuant to the Pennsylvania Whistleblower Law.   The plaintiff argued Salick's receipt of

Medicaid reimbursements constituted state funding, therefore making Salick a "public body" pursuant to the Whistleblower Law.   The Court rejected this interpretation of public body.   It stated "[i]t is abundantly clear that the legislature did not intend that the *mere receipt of monies from a state source for services rendered* should bring the recipient within the Whistleblower Law." Id. at 1527 (emphasis added).

More recently, the Eastern District also held that a private company that contracted with the government was not a public body pursuant to the Whistleblower Law.   In Brandau v. ACS, Inc., 2006 WL 2460891 (E.D. Pa. 8/22/06), the defendant had a service agreement with Northampton County by which the county paid the defendant to manage and operate the County's administrative computer systems.   After the defendant terminated the plaintiff's employment, she filed an action alleging the defendant violated the Whistleblower Law. The Court rejected the plaintiff's argument that the defendant was a "public body" and held:

> A private entity performing services pursuant to a government contract, however, does not qualify as being 'funded through the Commonwealth.'   Krajsa v. Keypunch, Inc., 622 A.2d 355, 360, 424 Pa. Super. 230, 240-241 (1993).   Our Court has held that the statutory language 'was obviously not intended to make an individual or corporation a "public body" solely on the basis that monies were received by it from the state as reimbursement for services rendered.' Cohen v. Salick

10

> Health Care, Inc., 772 F. Supp. 1521 (E.D. Pa. 1991).
> Accordingly, the fact that ACS provided computer
> network services to the County pursuant to a contract is
> not sufficient to establish that ACS is a public body
> under Pennsylvania's Whistleblower Law. Id. at *4.

In reaching this conclusion the Court relied upon the Pennsylvania Superior Court's decision in Krajsa v. Keypunch Inc., 622 A.2d 355 (Pa. Super. 1993). In Krajsa, the plaintiff argued the defendant's alleged violation of the Pennsylvania Whistleblower Law created a public policy exception to the employment at-will doctrine. The court held, however, the Whistleblower Law was not applicable because the defendant was not a public body. It held:

> Although [the defendant] performed governmental
> contracts, this is not sufficient to invoke the application
> of the Act. We agree with the lower court which
> reasoned that the legislative branch restricted the
> language of the Act to 'public' rather than 'private'
> entities because 'it may well have been concerned with
> opening up a flood of litigation between the millions of
> employers and their employees in the private sector. We
> are not prepared to expand the coverage of the Act into
> the private arena. Id. at 360 (internal citations omitted).

The present case is controlled by Cohen, Brandau, and Krajsa. PrimeCare is a private, for-profit corporation that has entered into various service contracts with counties to manage and provide health care to inmates and detainees. It is not a public body. The counties have merely paid PrimeCare to provide a service, which does not qualify as being funded through a political subdivision. To hold

11

otherwise would open the floodgate of litigation warned of in <u>Krajsa</u>.   If the

legislature wanted the Whistleblower Law to apply to private employers who have

contracts with the government then it would have clearly expressed this in the

statute.   It did not do so when enacting the law or through amendment in the 16

years since <u>Krajsa</u>.   The persuasive weight of authority has correctly decided

private corporations that merely have contracts with the government are not public

bodies and are not subject to the Pennsylvania Whistleblower Law.

Smith cites to <u>Denton v. Silver Stream Nursing and Rehabilitation Center</u>,

739 A.2d 571 (Pa. Super. 1999) in support of his argument that PrimeCare is a

"public body."   The panel deciding <u>Denton</u> relied on <u>Riggio v. Burns and Medical</u>

<u>College of Pennsylvania</u>, 711 A.2d 497 (Pa. Super. 1998).   However, neither case

is applicable to the present case.   In <u>Riggio</u>, the plaintiff sued the Medical College

of Pennsylvania alleging that it violated the Whistleblower Law.   In trying to

decide if the College was a public body pursuant to the Whistleblower Law, the

Court held that the College received yearly appropriations from the

Commonwealth. For example, the legislature appropriated over $4.5 million to

"The Medical College of Pennsylvania located in East Falls, Philadelphia" for

fiscal year ending June 30, 1991. <u>Id</u>. at 499, fn 2. Because of this type of funding,

the Court held that the College was a public body pursuant to the Whistleblower

Law. <u>Riggio</u> is easily distinguishable from the present case. Unlike the College in

Riggio, PrimeCare has not received any general appropriations to assist it in its operations. The counties have paid PrimeCare for services rendered pursuant to a service contract. See Brandau, supra. The difference is significant and explains why the Superior Court was able to distinguish the Eastern District's opinion in Cohen and find that the College received governmental funding to make it subject to the Whistleblower Law.

In Denton, a three judge panel of the Pennsylvania Superior Court held that the Whistleblower Law applied to a private corporation that received Medicaid reimbursement for treating patients covered by Medicaid. The Court held that it was bound by its prior decision in Riggio v. Burns. However, as argued above and even acknowledged in the Court's decision, the College in the Riggio received a general appropriation from the Commonwealth to assist it in its general operations. This was clearly different from the facts in Denton where the private nursing home only received reimbursement from Medicaid for treating patients covered by Medicaid.

What is most interesting is that the Denton panel cited to the inapplicable Riggio case, but completely ignored its prior precedent in Krajsa. President Judge McEwen, who was on the panel in the Krajsa case, dissented from the majority decision in Denton. No doubt recalling his decision in Krajsa, President Judge McEwen stated, "While the author of the majority view provides, in his usual

13

fashion, a sound rationale and persuasive expression of view, I am unable to find that appellees, privately owned, for-profit business entities, are 'public bodies' for purposes of the Whistleblower Law." Id. at 579.  For these reasons, the more persuasive definition of "public body" is found in Cohen, Krajsa, and Brandau; a private, for-profit corporation is not a public body just because a governmental unit pays it for services rendered pursuant to a service contract.  PrimeCare is not a public body.  The Pennsylvania Whistleblower Law does not apply to it.

### 2.  Smith's January 28, 2008 letter to Dr. Hoffman was not a good faith report of waste and wrongdoing.

As part of his *prima facie* case, Smith must prove that he made a good faith report of waste or wrongdoing.  The statute defines a good faith report as "a report of conduct defined in this act as wrongdoing or waste which is made without malice or consideration of personal benefit and which the person making the report has reasonable cause to believe is true." 43 Pa.C.S. §1422.

### a.  Smith's January 28, 2008 report was made with malice and consideration of personal benefit.

Smith submitted his letter dated January 28, 2008 during increasingly tense and divisive negotiations regarding Smith's job that began on December 7, 2007. (DSR #9). Dr. Hoffman met with Smith on December 7, 2007 to discuss restructuring Smith's job and compensation which would be beneficial to

PrimeCare and Smith. (Id.) Smith rejected Dr. Hoffman's offer and provided Dr. Hoffman with a written counter-proposal on December 10, 2007. (DSR #10). Vice President Joshua Lock then met with Smith and presented with him a written counter-proposal, which Smith, once again, rejected. (DSR #12). During another conversation between Lock and Smith about the financial package, Smith threatened to sue PrimeCare. (DSR #13). Smith then retained an attorney to represent him during the negotiations. (DSR #14). In the midst of these negotiations, Smith submitted his letter alleging waste and wrongdoing on his first day back to work. The letter was copied to Lock, Prime Care Medical, Inc.'s representative negotiating with Smith, and to Smith's attorney. (Smith Dep. Exh. #5). Based on the surrounding circumstances, there is no question Smith believed his January 28, 2008 letter would give him an advantage in the negotiations concerning his compensation and position with PrimeCare. Because the January 28, 2008 letter alleging waste and wrongdoing was made in consideration of Smith's personal benefit, it does not qualify as a good faith report. See Cipriani v. Lycoming County Housing Authority, 177 F. Supp. 2d 303 (M.D. Pa. 2001) (the Court held that animosity between the parties compromised any finding the plaintiff's complaints were made in good faith as defined by the Whistleblower Law. Id. at 331). (emphasis added).

15

b.   **Smith did not have reasonable cause to believe his report of alleged waste and wrongdoing was true.**

1.   *Staffing at Dauphin County Prison ("DCP").*

Smith alleges PrimeCare did not provide 20 hours of psychiatric care at DCP, as required by the contract. Dr. Martin, a PrimeCare psychiatrist, primarily worked at DCP. Just days before he took his leave of absence, Smith signed off and approved the psychiatrists' schedule for DCP which required Dr. Martin to work 10 hours per week. (DSR #22). Smith also told Dr. Martin he should work about 12 hours per week at DCP. (DSR #24). Dr. Martin, on occasion, inquired of Smith about his hours. Smith responded that Dr. Martin was doing a good job and the hours were not a concern. (DSR #23). Dauphin County Prison Warden DeRose was also aware of Dr. Martin's hours at the prison. Warden DeRose was pleased with Dr. Martin's service and amount of work at DCP and did not believe there was an issue regarding the specific number of hours Dr. Martin was providing to DCP. (DSR #26). There certainly cannot be any waste or wrongdoing when the warden, who is in charge of administering the contract with PrimeCare, does not believe there is a problem. Smith even agreed with this reasoning when he testified that "if the county says it's okay, okay. At least it's not deceitful or behind their back or anything." (Smith Dep., 47: 6-10).

16

Warden DeRose was also aware of PrimeCare's difficulties filling the Nurse Supervisor position and nursing shifts at the prison.   He never considered PrimeCare to be acting in a fraudulent manner or wasting Dauphin County resources. (DSR #19-20).

> 2.    *Physician   hours   and   supervision   at Lancaster County Prison ("LCP").*

PrimeCare provided Warden Guarini of LCP with quarterly reports regarding physician hours provided at the prison.   Warden Guarini did not invoke the penalty clause in the contract against PrimeCare for any alleged deficiencies in physician hours.   Warden Guarini discussed staffing issues with PrimeCare on a regular basis, especially considering that it was a new contract.   Warden Guarini and PrimeCare were able to amicably work out any staffing issues to Warden Guarini's satisfaction.  (DSR #30).

Smith alleged in his letter of January 28, 2008 that Dr. Eric Von Kiel did not adequately supervise Rodney Hostetter, a physician's assistant assigned to LCP. Smith claims this is "wrongdoing" because it violates the Pennsylvania Medical Practices Act.  Smith has no evidence to support such an allegation.  Dr. Von Kiel was on site two days per week starting November 1, 2007 when Lancaster County awarded the contract to PrimeCare.  (DSR #27).  In addition to the times on site,

17

Dr. Von Kiel was available seven days a week, 24 hours per day to take any calls from Mr. Hostetter. (DSR #28).

The Medical Practice Act provides "A physician assistant shall not perform a medical service without the supervision and personal direction of an approved physician." 63 P.S. §422.13 (d). The terms "supervision" and "personal direction" do not require the immediate physical presence of the physician. 49 Pa. Code §18.151. Telephone communications also comply with Pennsylvania regulations applicable to relaying medical regimens between a physician assistant and a physician. 49 Pa. Code §18.153.

### 3.    Operations in West Virginia.

Smith did not even make a report of waste or wrongdoing about hours at the West Virginia Division of Juvenile Services (WVDJS). The WVDJS reported the issue to PrimeCare. (SMF #58). Dr. Hoffman then directed Frank Komykoski to analyze physician hours at the West Virginia Regional Jail Authority (WVRJA). (DSR #60). Mr. Komykoski made a presentation to Dr. Hoffman and the vice-presidents at a meeting. (Komykoski Dep. 46:18-49:3). Dr. Hoffman remarked that PrimeCare needed to ensure all services were provided and to correct any services not provided. (Komykoski Dep. 48:18-22). Smith had nothing to do with the analysis or reporting of any alleged problem. (Komykoski Dep. 40:9-24). If he expressed any concern, it was shared by PrimeCare's entire upper management

18

staff.  Therefore, Smith made no report of waste or wrongdoing about PrimeCare's West Virginia operations.

## IV.   CONCLUSION

Smith is not entitled to Summary Judgment on his FMLA interference claim or his Pennsylvania Whistleblower Law claim.

Respectfully submitted,

Date:   September 16, 2009     By:   /s/ Michael J. Crocenzi
                                             Thomas J. Weber, Esquire
                                             Michael J. Crocenzi, Esquire
                                             Goldberg Katzman, P.C.
                                             320 Market Street, Strawberry Square
                                             P.O. Box 1268
                                             Harrisburg, PA   17108-1268
                                             (717) 234-4161
                                             *Attorneys for Defendants*

19

## CERTIFICATE OF WORD COUNT COMPLIANCE

I, Michael J. Crocenzi, being admitted to practice before this Court, certify that the preceding brief is filed in accordance with the word-count limit contained in L.R. 7.8(b)(2).  I further represent that, relying on the word count feature of the word processing software used to prepare this pleading, the brief contains 4,836 words.

Date:        September 16, 2009        GOLDBERG KATZMAN, P.C.


                                        /s/     Michael J. Crocenzi
                                        Michael J. Crocenzi, Esquire
                                        Attorney I.D. No. 66255
                                        320 Market Street
                                        Strawberry Square
                                        P. O. Box 1268
                                        Harrisburg, PA  17108-1268
                                        (717) 234-4161
                                        *Attorneys for Defendants*

180474.1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 16th day of September, 2009, I caused the foregoing document to be filed via ECF and that Michael J. Crocenzi, Esquire, is a filing user under the ECF system.  Upon the electronic filing of a pleading or other document, the ECF system will automatically generate and send a Notice of Electronic Filing to all filing users associated with this case.  Electronic service by the Court of the Notice of Electronic Filing constitutes service of the filed document and no additional service upon the filing user is required.

GOLDBERG KATZMAN, P.C.


/s/     Michael J. Crocenzi
Michael J. Crocenzi, Esquire
Attorney I.D. No. 66255
320 Market Street
Strawberry Square
P. O. Box 1268
Harrisburg, PA  17108-1268
(717) 234-4161
*Attorneys for Defendants*