IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD C. SMITH, | : | No. 1:08-CV-1397 |
| Plaintiff | : | |
| | : | |
| v. | : | Civil Action – Law |
| | : | |
| PRIME CARE MEDICAL, INC., | : | |
| CARL A. HOFFMAN, JR., D.O., | : | |
| THERESA M. HOFFMAN, | : | |
| JOSHUA D. LOCK, MARCY | : | Chief Judge Kane |
| HOFFMAN-SCHLEGEL, FRANK | : | |
| KOMYKOSKI, and KNIGHTS OF | : | |
| VON DUKE, LTD. | : | Jury Trial Demanded |
| Defendants | : | *Electronically Filed* |

## OPPOSITION TO DEFENDANTS' STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

Plaintiff, Richard C. Smith, by and through his counsel, responds to Defendants' Statement of Material Facts Not in Dispute, and avers as follows[1]:

1—6.   ADMITTED.

7.   DENIED. To the contrary, as of January 28, 2009, I was directed by Defendants to report to Joshua Lock. (Supplemental Sworn Statement of Richard C. Smith, ¶12).

---

[1] This Response in Opposition is supported by record material, including a Supplement Sworn Statement of Richard C. Smith with three exhibits appended thereto. One of these exhibits is deposition testimony of Mr. Smith that was not previously produced. References to the statement are to "Smith SSS" followed by the paragraph citation. References to Smith's deposition testimony are to "Ex. B.," followed by a reference to the notes of testimony. References to previously filed material are to the relevant docket number followed by reference to page, paragraph or notes of testimony, as relevant.

1

8. DENIED. To the contrary, Defendant Hoffman stated to Smith that he was being given shares of stock as a bonus for a job well done in the company. SMITH SSS, EX. B., NT 7).

9. ADMITTED.

10. DENIED. To the contrary, Smith signed said note, pursuant to Defendant Hoffman's representation to Smith that the stock was a bonus for a job well done. By way of further answer, the terms of said note provided that default would occur on the failure to pay principal and interest within five (5) years of August 18, 1999, and that Defendant Hoffman would be authorized to transfer shares at said time. (SMITH SSS, EX. B., NT 7)

11. DENIED. To the contrary, Smith owned stock in Knights of Von Duke, Ltd., but never received share certificate(s) to reflect the same. (Smith SSS, ¶2; SMITH SSS, EX. B., NT 9-10)

12. DENIED. To the contrary, the stock was a bonus for a job well done, as represented by Defendant Hoffman to Smith. (SMITH SSS, EX. B., NT 7).

13-14. ADMITTED

15. DENIED. To the contrary, the policy was approved by Defendant Carl Hoffman, not by Smith. By way of further answer, Defendant Hoffman signed policy # PCM J-05, regarding an inmate's Release of Financial Responsibility; Smith asserted to PCM that policy PCM J-05 and/or the form attached to PCM

       J-05 was inconsistent with requirements of the National Commission on Correctional Health Care ("NCCHC"), that said form had been disapproved by NCCHC when Broome County Sheriff's Department ("BCSD") sought NCCHC accreditation, that PCM had represented to BCSD that PCM would discontinue said form with BCSD and all other institutions where PCM provided services, and that PCM ignored Smith's repeated advice to Defendant Hoffman to discontinue use of said form. By way of further answer, PCM failed to produce said information during discovery. (Smith SSS, ¶3).

16. ADMITTED.

17. DENIED. To the contrary, Smith, at a minimum, was eligible to take up to 12 weeks of FMLA as of May 2007. (Smith SSS, ¶5)

18-19. ADMITTED.

20. DENIED AS STATED. Smith attended numerous Vice Presidents' meetings for PCM in which PCM's Vice President for Human Resources Marcy Hoffman-Schlegel reported on employees subject to FMLA leaves. Smith's use of the term "Constantly" was in the context that Ms. Hoffman-Schlegel often reported to Vice Presidents that she dealt with FMLA issues. By way of further answer, Smith understood that Ms. Hoffman-Schlegel would have communicated with Smith regarding any FMLA issues affecting Smith, although Smith never received any such communication. (Smith SSS, ¶6).

21. DENIED AS STATED. To the contrary, Smith testified that it never crossed his mind that his time off was covered by the Family Medical Leave Act because of the statements Dr. Hoffman made to him, namely that he had to stay out until he was "100%." (SMITH SSS, EX. B, NT 98)

22-25. ADMITTED.

26. DENIED. To the contrary, in January 2008, before Smith returned from his leave, he contended to Defendants through his counsel that he had raised issues of waste and wrongdoing by Defendants. This communication was confirmed by Defendant Lock, who on January 28, 2008, said that Smith found himself in a hostile work environment "because [Smith's] lawyer mentioned waste and wrongdoing." (Smith SSS ¶11, EX. B, NT 72).

27. DENIED AS STATED. To the contrary, Defendant Hoffman proposed to end Smith's employment, which caused several concerns to Smith, in particular the cost of health insurance if Smith were removed from the PCM health care plan, the repayment obligations on a loan that Smith had taken from his 401(k) plan, and a life insurance policy that Defendant Hoffman had cancelled. (Smith SSS, ¶8).

28. DENIED. To the contrary, Smith attempted to commit in writing what Defendant Hoffman had proposed in their prior meeting of December 10 as well as to specify several issues that were of concern to Smith; said issues

included the cost of health insurance if Smith were removed from the PCM health care plan, the repayment obligations on a loan that Smith had taken from his 401(k) plan, and a life insurance policy that Defendant Hoffman had cancelled. (Smith SSS ¶9).

29-30. ADMITTED

31. DENIED. To the contrary, either during or shortly following their meeting in the restaurant, Lock stated to Smith that he had two choices, either accept Hoffman's proposal or "sue [Hoffman's] ass," and in said conversation Lock expressly recommended that he contact Attorney Frank P. Clark. By way of further answer, any discussion about how Smith might afford the expenses of litigation, the precise words of which Smith does not specifically recall, followed Lock's "sue his ass" statement and Lock's suggestion that Smith contact Attorney Clark. (Smith SSS ¶10).

32. DENIED. To the contrary, Smith engaged an attorney to communicate to Defendants a response to their offer; said response included (among other items) that Smith was being asked to leave his employment with PCM and waive all claims against PCM despite the facts that a) PCM had violated Smith's FMLA rights and b) that PCM had violated Smith's rights as a whistleblower. (Smith SSS ¶11).

33. ADMITTED.

34. DENIED. To the contrary, Smith was ready to return to work prior to July 2007, and stated as much to his physician. By way of further answer, Smith told Defendant Hoffman on multiple occasions beginning in or about July 2007 to contact Dr. Brier to confirm his availability to return to work. By way of further answer, PCM never conditioned Smith's leave on his provision of fitness to work information and therefore waived the same as a requirement of any FMLA leave. (Doc. 39, ¶23; Smith SSS, ¶7, EX. B, NT 99).

35. DENIED AS STATED. To the contrary, when asked in January 2008, to provide a statement to return to work, Dr. Brier signed a letter stating in part that "patient is cleared to return to work September 20, 2007 as is documented in my notes." By way of further answer, had Defendants notified Smith that it required a fitness for duty certificate in a manner as required by the FMLA, Smith could have adjusted his leave accordingly (Doc. 39, ¶23; Smith SSS, ¶7, EX. B., NT 99).

36. DENIED. To the contrary, Smith was ready to return to work prior to July 2007, and stated as much to his physician. By way of further answer, Smith told Defendant Hoffman on multiple occasions beginning in or about July 2007 to contact Dr. Brier to confirm his availability to return to work. By way of further answer, PCM never conditioned Smith's leave on his provision of

fitness to work information and therefore waived the same as a requirement of any FMLA leave. (Doc. 39, ¶23; SMITH SSS, EX. B., NT 99).

37. ADMITTED.

38. DENIED. To the contrary, the meeting was not one where Defendants Lock and Theresa Hoffman "shared various instructions" with Smith, but rather was an abusive confrontation with Smith that imposed limitations on Smith's terms and conditions of employment; Lock expressly stated that said confrontation was occurring because Smith's attorney mentioned waste and wrongdoing". (Smith SSS, ¶13, EX. B, NT 71-72).

39. DENIED AS STATED. To the contrary, the meeting was not one where Defendants Lock and Theresa Hoffman "shared various instructions" with Smith, but rather was an abusive confrontation with Smith that imposed limitations on Smith's terms and conditions of employment; Lock expressly stated that said confrontation was occurring because Smith's attorney mentioned waste and wrongdoing" By way of further answer, Smith provided a letter to Lock and Theresa Hoffman in the middle of the meeting. (Smith SSS, ¶13, EX. B., NT 71-72).

40. DENIED. To the contrary, PCM engaged an attorney, William Fetterhoff, who is not "independent," but who was involved in discussions about the Pennsylvania "state investigation" with PCM's other lawyers and therefore

had an attorney-client relationship with PCM; by way of further answer, Smith, in the course of his duties for PCM, has communicated with or been present on several occasions where Fetterhoff participated in legal discussions regarding legal issues in defense of PCM or PCM Staff and Physicians. (Smith SSS, ¶14; Doc. 40-3, NT 120).

41-43. ADMITTED.

44. DENIED AS STATED. Although Smith had never previously raised a concern with Hoffman that the psychiatrist at Berks County Prison ("BCP") was being shifted to York County Prison, Smith did have repeated discussions with Hoffman prior to May 2007 where he raised concerns about the BCP psychiatrist being shifted to other institutions. (Smith SSS, ¶15)

45. DENIED AS STATED. To the contrary, Hoffman attempted to block others from coming in the room and attempted to engage Smith in a conversation at that time. By way of further answer, Smith advised Hoffman there wasn't much to talk about; Hoffman asked to meet with Smith on a later occasion, to which Smith agreed before leaving the office. (Smith SSS, ¶16, EX. B, NT 82).

46-47. ADMITTED.

48. DENIED. To the contrary, on numerous occasions prior to May 2007, Smith reported waste and wrongdoing to Defendant Hoffman, whose response on

such occasions made clear to Smith that Hoffman was in charge of the matter and that Smith was not to raise the issue further. By way of further information, one such occasion prior to May 2007 when Smith had raised concerns about providing less than the number of contracted psychiatric hours at Dauphin County Prison, Hoffman was dismissive of Smith's concerns to the point of winking at Smith, telling him that the Warden is a "good friend of [Hoffman]" and that Hoffman would speak to the warden. On another instance prior to May 2007 where Smith had raised concerns that PCM improperly used physician call time to meet PCM's contractual obligations in its West Virginia operations, Hoffman pointedly stated to Smith that the discussion was "ended," and then directed staff to disregard Smith's concerns and continue to treat physician call time as meeting its contractual obligations. (Smith SSS, ¶4).

49. DENIED. To the contrary, Defendants expressly forbade Smith on and after January 28, 2008, from contacting clients, including any warden or county official, despite the fact that Smith routinely communicated with wardens and other county officials prior to May 2007. (Smith SSS, ¶17).

50-51. ADMITTED.

52. DENIED. To the contrary, Warden DeRose called Smith on at least three (3) occasions prior to May 2007 to complain that the nurse supervisor position

9

was vacant for too long and demanded that it be filled. By way of further answer, Smith communicated DeRose's complaint to Defendant with a recommendation that the salary for the position be increased and that the position be advertised and filled; Hoffman rejected Smith's recommendations. (Smith SSS, ¶18).

53. DENIED. To the contrary, Warden DeRose called Smith on at least three (3) occasions prior to May 2007 to complain that the nurse supervisor position was vacant for too long and demanded that it be filled. By way of further answer, Smith communicated DeRose's complaint to Defendant with a recommendation that the salary for the position be increased and that the position be advertised and filled; Hoffman rejected Smith's recommendations. (Smith SSS, ¶18).

54. DENIED. To the contrary, Warden DeRose has never expressed, under oath, that he was "fully aware" that between 2004 and 2008 PCM was contractually obligated to provide at least 20 hours per week of psychiatric coverage at Dauphin County, that PCM failed to meet this requirement at least 205 weeks over said five-year period, that PCM's collective shortfall of such hours amounts to at least 1,881 hours over said period, that PCM received compensation from Dauphin County during this period as if it were providing

all 20 hours per week, and that PCM may have been unjustly enriched in an amount in excess of $375,000 for this practice alone. (Doc. 39, ¶65-84).

55. ADMITTED.

56. DENIED. To the contrary, Smith was directed by Defendant Hoffman to schedule Dr. Martin approximately 10 hours per week at Dauphin County, despite the numerous times that Smith alerted Defendant Hoffman that such schedule was not in accord with the specific requirements of the Dauphin County contract. By way of further answer, Hoffman required Smith to present Hoffman Affidavit Exhibit 2 (DOC 35-4, p. 15) to Hoffman on a periodic basis, and Hoffman also signed the same. By way of further answer, PCM's Director of Mental Health Robert Nichols acknowledged in his deposition that his wife, Dauphin County Deputy Warden, raised the issue to her and he communicated the issue to Smith at least twice, and that Nichols believed that Smith raised the issue with Hoffman. (Smith SSS, ¶19; Doc. 40-5, NT 47-49).

57. DENIED. To the contrary, Dr. Martin discussed with Smith on numerous occasions his awareness that that the 2004-2008 Dauphin County contract required PCM to provide 20 hours of psychiatric coverage per week at Dauphin County Prison and that PCM was regularly failing to meet the requirement. By way of further answer, Dr. Martin specifically said to Smith that he [Martin] asked Hoffman whether he should work the 20 hours required

by the contract at Dauphin County Prison and that Hoffman's preference was that he not. By way of further answer, Smith informed Dr. Martin on several occasions that he was attempting to resolve the issue with Defendant Hoffman but was unsuccessful, until January 29, 2008, when Dr. Martin came into Smith's office, smiled at Smith and said "we are working the 20 hours now, effective immediately!" (Smith SSS, ¶20).

58. DENIED AS STATED. Smith scheduled Dr. Martin at Dauphin County Prison as directed by Defendant Hoffman. (Smith SSS, ¶21).

59. ADMITTED.

60. DENIED. To the contrary, PCM did not provide the number of hours of Dr. Martin's time as required by the Dauphin County contract, an issue that Smith repeatedly raised with Hoffman, as demonstrated by the records. (Doc. 39, ¶65-84; Doc. 40-5, NT 47-49).

61-62 ADMITTED.

63. DENIED AS STATED. To the contrary, time sheet information was produced by Defendants as to Drs. Wagner and Young. (Smith SSS, ¶22).

64. DENIED. To the contrary, Warden Guarini has never expressed, under oath, that he was "satisfied" that in at least 50 weeks between November 2007 and December 2008 PCM provided less than the required 24 hours of physician to Lancaster County Prison each week, that PCM's records show a total

12

shortfall of at least 618 hours of physician time during this period, that during this period PCM accepted funds from Lancaster County as if PCM was providing 24 hours per week of physician time at Lancaster County Prison during this period of time and that PCM was unjustly enriched by the difference between revenue derived from Lancaster County for the total amount of physician service time contracted and the actual physician service time that PCM provided. (Doc. 39, ¶85-93).

65.   ADMITTED.

66.   DENIED. The averment is an incorrect legal conclusion to which no response is required and is therefore denied.

                                        Respectfully Submitted,

                                        CLARK &KREVSKY, LLC

Dated: September 21, 2009              By:   s/Frank P. Clark
                                        Frank P. Clark
                                        Attorney I.D. PA #35443
                                        20 Erford Road
                                        Suite 300A
                                        Lemoyne, PA  17043
                                        (717) 731-8600
                                        (717) 731-4764 (fax)
                                        FPC@Clark-Krevskylaw.com
                                        Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I, FRANK P. CLARK, do hereby certify that I served a true and correct copy of the foregoing PLAINTIFF'S MOTION TO EXTEND LENGTH OF BRIEF IN SUPPORT OF A MOTION FOR PARTIAL SUMMARY JUDGMENT upon the following be1ow-named party via the Electronic Filing System.

**SERVED UPON:**

Michael J. Crocenzi, Esquire
Thomas J. Weber, Esquire
Thomas E. Brenner, Esquire
GOLDBERG KATZMAN, P.C.
P.O. Box 1268
Harrisburg, PA 17108

Dated: <u>September 21, 2009</u>          <u>s/Frank P. Clark</u>
                                          Frank P. Clark